James R. Touchstone, SBN 184584
jrt@jones-mayer.com
Denise Lynch Rocawich, SBN 232792
dlr@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone: (714) 446-1400
Facsimile: (714) 446-1448

Attorneys for Defendant,
SEAN STEELMON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON VASQUEZ, individually and as successor-in-interest to Decedent, Oscar Vasquez Lopez; DAYLIN VASQUEZ individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; LUSSY VASQUEZ, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; OSCAR VASQUEZ, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; K.V., by and through her Guardian ad litem, Daylin Vasquez, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; A.V., by and through his Guardian ad litem, Daylin Vasquez, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; and JOSE VASQUEZ LOPEZ, individually, <br><br>Plaintiffs, <br><br>vs. <br><br>CITY OF LOS ANGELES, SEAN STEELMON; and DOES 2 through 10, inclusive, <br><br>Defendants. | Case No: 8:24−cv−02421-FLA (JDE) <br> Judge: Hon. Fernando L. Aenlle-Rocha <br> Court Room: 6B <br><br> **DEFENDANT SEAN STEELMON'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT OF ISSUES; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br><br> Date: April 3, 2026 <br> Time: 1:30 p.m. <br> Crtm: 6B |

## NOTICE OF MOTION FOR SUMMARY JUDGMENT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 3, 2026 at 1:30 p.m. in Courtroom 6B of the above-entitled court, located at the First Street U.S. Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, 6th Floor or as soon thereafter as the matter may be heard, Defendant, Sean Steelmon, will and hereby does move for summary judgment on Plaintiffs' First Complaint pursuant to Federal Rule of Civil Procedure 56 on the ground that there is no genuine issue of material fact and Officer Steelmon is entitled to judgment as a matter of law. In the alternative, if the Court finds a genuine issue of material fact prevents the entry of summary judgment for Officer Steelmon, Officer Steelmon moves under Federal Rule of Civil Procedure 56(d) for an Order specifying the facts from the proposed Statement of Uncontroverted Facts that appear without substantial controversy in order to narrow the issues for trial.

The Motion is based on this Notice of Motion and Motion and attached Memorandum of Points and Authorities, the Evidence contained in the Evidentiary Appendix and lodged as noted in the Notice of Lodging, the [Proposed] Statement of Uncontroverted Facts filed concurrently herewith, the file and records in this case, and any further argument or evidence the Court deems fit to receive at any hearing on this Motion. This Motion is filed after the conference of counsel required by Local Rule 7-3.

Dated:    February 27, 2026         Respectfully submitted,

JONES MAYER


By:/s/Denise Lynch Rocawich
JAMES R. TOUCHSTONE
DENISE LYNCH ROCAWICH
Attorneys for Sean Steelmon

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................................... 4

MEMORANDUM OF POINTS AND AUTHORIES ......................................... 9

I.      INTRODUCTION ............................................................................... 9

II.     LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT ................ 9

III.    RELEVANT FACTS AND ALLEGATIONS IN THE COMPLAINT ............... 10

IV.     NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO
        THE FIRST CLAIM AGAINST OFFICER STEELMON
        UNDER 42 U.S.C. § 1983 FOR EXCESSIVE FORCE ....................................... 14

V.      NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE
        SECOND CLAIM AGAINST OFFICER STEELMON UNDER
        42 U.S.C. § 1983 FOR UNLAWFUL DETENTION/FALSE ARREST .............. 17

VI.     NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE
        FOURTH CLAIM AGAINST OFFICER STEELMON UNDER
        42 U.S.C. § 1983 FOR INTERFERENCE WITH FAMILIAL
        RELATIONSHIP ........................................................................................ 20

VII.    OFFICER STEELMON IS ENTITLED TO QUALIFIED IMMUNITY
        AS TO THE FIRST THROUGH FOURTH CLAIMS ......................................... 22

VIII.   NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE
        EIGHTH CLAIM AGAINST OFFICER STEELMON FOR BATTERY ........... 25

IX.     NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE
        NINTH CLAIM AGAINST OFFICER STEELMON FOR
        NEGLIGENCE............................................................................................ 26

X.      NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE
        TENTH CLAIM AGAINST OFFICER STEELMON FOR NEGLIGENT
        INFLICTION FOR EMOTIONAL DISTRESS ......................................... 27

XI.     NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE
        ELEVENTH CLAIM AGAINST OFFICER STEELMON FOR
        VIOLATION OF CIVIL CODE SECTION 52.1 ................................................. 29

XII.    CONCLUSION        ....................................................................... 30

DEFENDANT STEELMON'S MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

<u>Ala. v. White</u>,
496 U.S. 325, 110 S. Ct. 2412 (1990)..........................................................................23

<u>Anderson v. Liberty Lobby, Inc.</u>,
477 U.S. 242, 106 S.Ct. 2505 (1986)................................................................. 9, 10, 28

<u>Ashcroft v. al-Kidd</u>,
563 U.S. 731, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)........................................23

<u>Brosseau v. Haugen</u>,
543 U.S. 194, 125 S. Ct. 596 ......................................................................................22

<u>Bryan v. MacPherson</u>,
630 F.3d 805 (9th Cir. 2010) .......................................................................................15

<u>Camarillo v. McCarthy</u>,
998 F.2d 638 (9th Cir. 1993) .......................................................................................22

<u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 106 S. Ct. 2548 (1986)....................................................................9, 10

<u>Chew v. Gates</u>,
27 F.3d 1432 (9th Cir. 1994) .......................................................................................15

<u>Clement v. Gomez</u>,
298 F.3d 898 (9th Cir. 2002) .......................................................................................22

<u>Cruz v. City of Anaheim</u>,
765 F.3d 1076 (9th Cir. 2014) .....................................................................................25

<u>Delia v. City of Rialto</u>,
621 F.3d 1069 (9th Cir. 2010) .....................................................................................22

<u>Deorle v. Rutherford</u>,
272 F.3d 1272 (9th Cir. 2001) .....................................................................................16

<u>Dubner v. City and County of San Francisco</u>,
266 F.3d 959 (9th Cir. 2001) .......................................................................................20

<u>Dunn v. Castro</u>,
621 F.3d 1196 (9th Cir. 2010) .....................................................................................22

- 4 -

Foster v. City of Indio,
   908 F.3d 1204 (9th Cir. 2018)............................................................... 18, 19

Gasho v. United States,
   39 F.3d 1420 (9th Cir. 1994) ................................................................ 22

Graham v. Connor,
   490 U.S. 386, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989)...................... *passim*

Hanon v. Data Products Corp.,
   976 F.2d 497 (9th Cir. 1992) ................................................. 10, 11, 12, 13

Harris v. Roderick,
   126 F.3d 1189 (9th Cir. 1997) .............................................................. 15, 16

Haynie v. County of Los Angeles (9th Cir. 2003)
   339 F.3d 1071 ...................................................................................... 20

Illinois v. Gates,
   462 U.S. 213, 103 S.Ct. 2317 (1983).................................................... 18

Jeffers v. Gomez,
   267 F.3d 895 (9th Cir. 2001) ................................................................ 10

Kisela v. Hughes,
   138 S. Ct. 1148 (2018)......................................................................... 24

Estate of Lopez v. Gelhaus,
   871 F.3d 998 (9th Cir. 2017) ................................................................ 28

Margolis v. Ryan,
   140 F.3d 850 (9th Cir. 1998) ................................................................. 9

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
   475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)........................ 10

Miller v. Clark Cty.,
   340 F.3d 959 (9th Cir. 2003) ............................................................... 15, 16

Monroe v. City of Phoenix,
   248 F.3d 851 (9th Cir. 2001) ................................................................ 25

Onossian v. Block,
   175 F.3d 1169 (9th Cir. Cal. 1999)....................................................... 21

Porter v. Osborn,
   546 F.3d 1131 (9th Cir.2008) ........................................................ 20, 21, 22

Retail Clerks Union Local 648 v. Hub Pharmacy, Inc.,
    707 F.2d 1030 (9th Cir. 1983) ........................................................... 9

Sabbe v. Washington Cnty. Bd. of Commissioners,
    84 F.4th 807 (9th Cir. 2023) ............................................................ 25

Saucier v. Katz,
    533 U.S. 194, 121 S.Ct. 2151 (2001) ............................................... 22

Scott v. Harris,
    550 U.S. 372 ............................................................................. 14, 28

Smith v. City of Hemet,
    394 F.3d 689 (9th Cir. 2005) ...................................................... 15, 16

Smith v. Cty. of Butte,
    2017 U.S. Dist. LEXIS 65335 (E.D. Cal. Apr. 28, 2017) ................ 27, 28

Terry v. Ohio,
    392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)..................... 17, 19

U.S. v. Bautista
    684 F.2d 1286 (9th Cir. 1982) ........................................................ 20

U.S. v. Parr,
    843 F.2d 1228 (9th Cir. 1988) ........................................................ 20

United States v. Alvarez,
    899 F.2d 833 (9th Cir. 1990) .......................................................... 19

United States v. Buffington,
    815 F.2d 1292 (9th Cir. 1987) ........................................................ 19

United States v. Hensley,
    469 U.S. 221, 105 S. Ct. 675 (1985)............................................... 19

United States v. Sokolow,
    490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989)..................... 17, 19

United States v. Terry-Crespo,
    356 F.3d 1170 (9th Cir. 2004)....................................................... 17, 18

United States v. Torres,
    534 F.3d 207 (3rd. Cir. 2008) ........................................................ 19

Villarimo v. Aloha Island Air, Inc.,
    281 F. 3d 1054 (9th Cir. 2002) ....................................................... 28

DEFENDANT STEELMON'S MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

Ward v. City of San Jose,
  967 F.2d 280 (9th Cir. 1992) ................................................................. 14

White v. Pauly,
  580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017)........................ 23, 24

Wilkinson v. Torres,
  610 F.3d 546 (9th Cir. 2010) ................................................................. 20

**California Cases**

Burgess v. Superior Court,
  2 Cal.4th 1064 ...................................................................................... 29

Cornell v. City & Cty. of San Francisco,
  17 Cal. App. 5th 766 (2017) ................................................................. 29

Edson v. City of Anaheim,
  63 Cal.App.4th 1269 (1998) ................................................................. 26

Friedman v. Merck & Co.,
  107 Cal.App.4th 454 ............................................................................. 29

Grundt v. City of Los Angeles,
  2 Cal.3d 575 (1970) .............................................................................. 26

Hayes v. Cty. of San Diego,
  57 Cal. 4th 622 (2013) .......................................................................... 26

Hernandez v. City of Pomona,
  46 Cal.4th 501 (2009) ........................................................................... 26

Munoz v. City of Union City,
  120 Cal.App.4th 1077 (2004) ............................................................... 25

People v. Bowen,
  195 Cal. App. 3d 269 (1987) ................................................................ 20

People v. Celis,
  33 Cal. 4th 667 (2004) .......................................................................... 19

Potter v. Firestone Tire & Rubber Co.,
  6 Cal.4th 965 ........................................................................................ 29

Thing v. La Chusa,
  48 Cal.3d 644 ....................................................................................... 27

Toomey v. Southern Pac. R. Co. (1890)
    86 Cal. 374 ................................................................................................ 26

**Federal Statutes**

42 U.S.C.
    § 1983 ............................................................................... 14, 17, 20, 21

Fed. R. Civ. P. 56 .......................................................................................... 9, 10

**California Statutes**

Cal. Penal Code
    § 25400 ............................................................................................. 15, 19

Civil Code
    § 52.1 ...................................................................................................... 29

Penal Code
    § 241 ....................................................................................................... 20
    § 25850(b) .............................................................................................. 19

**Other Authorities**

William W Schwarzer, A. Wallace Tashima & James M. Wagstaffe,
    California Practice Guide: Federal Civil Procedure Before Trial §
    14:144 ..................................................................................................... 10

DEFENDANT STEELMON'S MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiffs assert eleven claims against Defendant, Officer Sean Steelmon, arising from Officer Steelmon's use of deadly force against Decedent Oscar Vasquez Lopez on October 7, 2023. The undisputed facts and case law set forth in this Motion, however, demonstrate that Plaintiffs' claims against Officer Steelmon must fail as a matter of law.

### II.    LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

A Motion for Summary Judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2509-10 (1986).  It is the moving party's burden to show it is entitled to summary judgment — that "under the governing law, there can be but one reasonable conclusion as to the verdict."  Anderson, 477 U.S. at 250; See also Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).

The moving party's initial burden is to identify the elements of the claim or defense and the evidence that it believes demonstrates the absence of an issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53 (1986). Where the non-moving party has the burden of proof at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.  Id., 477 U.S. at 325.  Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id.  The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing as to any one of the elements of the case with respect to which the non-moving party has the burden of proof at trial.  Id., 477 U.S. at 322.

The burden then shifts to the non-moving party to show that there is a genuine

1   issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477

2   U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The non-moving party must make an affirmative

3   showing on all matters placed in issue by the motion as to which it has the burden of

4   proof at trial.  <u>Celotex</u>, 477 U.S. at 322, <u>Anderson</u>, 477 U.S. at 252, <u>see also</u> William W

5   Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>California Practice Guide:</u>

6   <u>Federal Civil Procedure Before Trial</u> § 14:144.  Even though evidence on summary

7   judgment must be viewed in light most favorable to the non-moving party, plaintiffs must

8   do more than simply make allegations that defendants acted improperly in order to

9   survive summary judgment. Fed. R. Civ. P. 56(e)(2); <u>Jeffers v. Gomez</u>, 267 F.3d 895,

10  907 (9th Cir. 2001). The non-moving party must make this showing with admissible

11  evidence.  <u>See</u> <u>Celotex</u>, 477 U.S. at 324.  Where the record taken as a whole could not

12  lead a rational trier of fact to find for the moving party, there is no "genuine issue for

13  trial" and summary judgment is compelled.  <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v.</u>

14  <u>Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); <u>Hanon</u>

15  <u>v. Data Products Corp.</u>, 976 F.2d 497, 500 (9th Cir. 1992).

16

17  **III.     RELEVANT FACTS AND ALLEGATIONS IN THE COMPLAINT**

18          On October 7, 2023, at approximately 12:51 a.m., a 911 call was made to LAPD's

19  Communications Division. SUF 1 The caller stated there was a man armed with a gun

20  inside of a pickup truck parked at CVS at Sherman Way and Variel Avenue in the City of

21  Los Angeles. SUF 2 The 911 caller was no longer at the scene when Officers arrived

22  though his phone number was included in the Computer Aided Dispatch Report and he

23  was later identified and interviewed. SUF 3 At approximately 12:57 a.m., a radio call was

24  broadcast, "Any Topanga Unit, 415 man with a gun, Sherman Way and Variel. Suspect is

25  a male seated inside a dark pickup truck parked in front of CVS holding a handgun,

26  Code-Two, Incident 207, RD 2136." SUF 4

27          Defendant, Officer Steelmon and his partner Officer Tamate were at a traffic

28  collision investigation in close proximity to Sherman Way and Variel Avenue when they

1  heard the broadcast. SUF 5 Officers Steelmon and Tamate completed their call and

2  responded to the man with a gun radio call. Id. Sgt. John Talbot broadcast he would also

3  respond to the call. SUF 6. On the way to the call, Officers Steelmon and Tamate

4  discussed the comments of the call and discussed tactics to be used in response. SUF 7

5  Prior to October 7, 2023, Officers Steelmon and Tamate had worked together, on and off,

6  for 13 years and had handled various incidents together. SUF 8 On October 7, 2023,

7  Officers Steelmon and Tamate had a high degree of operational familiarity and

8  understood each other's tendencies, communication styles and tactical positioning

9  without the need for explicit direction. Id. Also en route to the call,  Officer Steelmon

10  took his shotgun out of the mounted rack. SUF 9 Officer Steelmon chose the shotgun

11  because the  radio call involved a man with a gun inside a vehicle, because he is a Slug

12  Cadre member, a tactical shot -- Slug Shotgun Cadre member and Rifle Cadre member,

13  because he was very comfortable with the weapon system and because he was more

14  confident in returning fire should a suspect engage officers from inside the vehicle. SUF

15  10

16       Sgt. Talbot arrived on scene first at approximately 1:00 a.m.. SUF 11. As Officers

17  Steelmon and Tamate turned northbound on Variel approaching the scene, they observed

18  a gray GM pickup truck with an extended cab matching the description of the suspect

19  vehicle parked in front of CVS and facing southbound. SUF 12 This vehicle was later

20  determined to have Decedent Oscar Vasquez Lopez and Plaintiff Jose Vasquez Lopez as

21  occupants. SUF 13 There were no other vehicles matching the suspect vehicle description

22  in front of the CVS. SUF 14 As they approached in their vehicle, Officer Steelmon

23  attempted to see into the front window to determine whether the truck had any occupants,

24  but was unable to determine that. SUF 15 Officer Steelmon informed Officer Tamate that

25  he could not determine whether the truck had occupants so they discussed and formulated

26  a plan of approach. SUF 16 Officers Steelmon and Tamate decided to approach from the

27  rear of the pickup truck and to initiate a high risk stop. SUF 17 Officers Steelmon and

28  Tamate arrived approximately a minute after Sgt. Talbot. SUF 18 Two additional

1   Officers, Phan and Mirzoyan, arrived roughly a minute after Officers Steelmon and

2   Tamate. SUF 19

3       Officer Tamate positioned their police vehicle approximately 20 feet behind the

4   pickup truck. SUF 20 The back window of the suspect vehicle had dark tint as did the

5   rear extended cab windows preventing the Officers from seeing inside those windows.

6   SUF 21 Due to the call remarks stating the man was seen with a firearm, Officer

7   Steelmon exited the vehicle with the shotgun, Officer Tamate unholstered his sidearm

8   and Officers Phan and Mirzoyan both unholstered their sidearms. SUF 22 Prior to

9   approaching Vasquez's vehicle, the Officers decided that they would "push up and clear"

10  the vehicle on the passenger side and that Officer Steelmon would be "point" as he was

11  armed with the shotgun. SUF 23 Officer Steelmon was the first officer to move toward

12  the suspects' pickup truck holding his shotgun at a low ready with his finger on the

13  safety. SUF 24 Officer Mirzoyan followed behind Officer Steelmon with his pistol at a

14  low ready. Id. Officer Tamate positioned himself third behind Officer Mirzoyan with his

15  pistol held down by his right side with a one-hand grip. Id. Officer Phan trailed as the

16  fourth officer holding his pistol in his right hand. Id.

17      Officer Steelmon yelled at the passenger, Plaintiff Jose Vasquez Lopez, to exit the

18  vehicle; however, there was no reaction or movement. SUF 25 Officer Tamate gave

19  commands to Plaintiff Jose Vasquez Lopez in Spanish to exit the vehicle and identified

20  the Officers as police. SUF 26 Officer Tamate also hit the side of the truck with his hand,

21  making a loud pounding sound. Id. Officer Steelmon moved forward positioning himself

22  parallel to the passenger side door of the truck. SUF 27 Officer Steelmon used the light

23  on his shotgun to illuminate the interior. Id. Officer Mirzoyan remained second and

24  positioned himself to Officer Steelmon's left, keeping his pistol at a low-ready. SUF 28

25  Officer Tamate opened the truck's passenger side door and backed away. SUF 29 Officer

26  Steelmon saw two occupants in the vehicle and both appeared to be passed out. SUF 30

27  Additional commands were given, in Spanish, to exit the vehicle and Officer Tamate

28  again identified the Officers as police. SUF 31

DEFENDANT STEELMON'S MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

Officer Tamate grabbed Plaintiff Jose Vasquez Lopez's right wrist, shook it and gave additional commands in Spanish. SUF 32 Plaintiff Jose Vasquez Lopez opened his eyes but didn't respond to Officer Tamate. Id. After attempting and failing to remove Plaintiff Jose Vasquez Lopez, Officer Tamate repositioned himself to the driver's side of the vehicle. SUF 33 As Officer Tamate was reaching for the driver door handle, Officer Steelmon spotted the gun and yelled, "Gun, gun, gun!" "Don't move!" "Put your hands up now!". SUF 34 Decedent did not put his hands up. SUF 35 Steelmon then ordered "Hands in the air!" SUF 36 Officer Steelmon gave directions to the team of Officers telling them "Grab him, grab passenger out, rip him out. Driver's got a gun in his waistband." SUF 37 Officer Tamate pulled Plaintiff Jose Vasquez Lopez out of the truck and away from the truck and handcuffed him. SUF 38 Plaintiff Jose Vasquez Lopez was completely limp as he was pulled out of the truck, pulled further from the truck and handcuffed and his eyes were closed throughout. SUF 39

Officer Steelmon gave additional commands to Decedent yelling "Don't move, don't reach for the gun. Do not reach for the gun!! I'm going to shoot you if you reach for that gun. Don't do it!" SUF 40 Decedent is seen moving his hands around and not listening to Officer Steelmon's commands. SUF 41 Officer Steelmon again yelled at Decedent "Don't do it!" SUF 42 Officer Steelmon then advised the team, "He has a gun in his waistband, he's not listening to commands." SUF 43 Decedent continued moving his hands around in front of him. SUF 44 Officer Steelmon commanded again "Hands in the air!" "Put your hands on top of your head now!" SUF 45 Decedent did not comply. SUF 46 Decedent then nodded his head once and reached his right hand towards his waistband. SUF 47 Immediately after Decedent began reaching toward his waistband, Officer Steelmon fired a single shot at Decedent. SUF 48 At the time he fired, Officer Steelmon was in fear for his life, and the lives of his fellow Officers, believing that Decedent was retrieving the handgun in order to fire it at Officer Steelmon. SUF 49 Officer Steelmon made the split-second decision to shoot when Decedent reached for his firearm. SUF 50

DEFENDANT STEELMON'S MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

1   Decedent indeed had a firearm in his waistband which was recovered by Officer
2   Tamate on scene. SUF 51 Officer Steelmon communicated, "Gun is exposed in his
3   waistband." Officer Tamate acknowledged Steelmon and stated, "Yeah, I got it." SUF 52
4   Officer Tamate recovered the loaded pistol from Oscar's waistband and placed it on top
5   of the truck bed cover. SUF 53 Officer Tamate went back to Oscar's waistband and
6   recovered an additional magazine and also placed it on the truck bed cover. SUF 54
7   Plaintiff Jose Vasquez Lopez made no movement in between the time he was handcuffed
8   until the shot was fired and instead remained on his stomach with his eyes closed. SUF
9   55 Plaintiff Jose Vasquez Lopez did not have any physical reaction to the gun shot, did
10  not move or flinch, did not open his eyes and remained in the same position as he had
11  been since he had been handcuffed. SUF 56

12

13  **IV.    NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE FIRST**
14  **CLAIM AGAINST OFFICER STEELMON UNDER 42 U.S.C. § 1983 FOR**
15  **EXCESSIVE FORCE**

16  All claims that law enforcement officers have used excessive force -- deadly or
17  otherwise -- in the course of an arrest must be analyzed under the Fourth Amendment and
18  its "reasonableness" standard which requires "careful attention to the facts and
19  circumstances of each particular case," without the "20/20 vision of hindsight," adopting
20  "the perspective of a reasonable officer on the scene," and making "allowance for the fact
21  that police officers are often forced to make split second judgments – in circumstances
22  that are tense, uncertain, and rapidly evolving." Graham v. Connor, 490 U.S. 386, 395-
23  97, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989); Scott v. Harris, 550 U.S. 372, 383; 127 S.
24  Ct. 1769; 167 L. Ed. 2d 686 (2007); Ward v. City of San Jose, 967 F.2d 280, 284 (9th
25  Cir. 1992) [as amended]. The inquiry "is an objective one: the question is whether the
26  officers' actions are 'objectively reasonable' in light of the facts and circumstances
27  confronting them, without regard to their underlying intent or motivation." Graham, 490
28  U.S. at 396.

-14-

1    Whether a specific use of force is reasonable requires a court to balance the nature

2  and quality of the intrusion on an individual's liberty with the countervailing

3  governmental interests at stake. Graham, 490 U.S. at 396; see also Smith v. City of

4  Hemet, 394 F.3d 689, 701 (9th Cir. 2005). Such analysis is approached using a three-step

5  inquiry. First, the gravity of the particular intrusion on Fourth Amendment interests is

6  assessed by evaluating the type and amount of force inflicted. See Chew v. Gates, 27

7  F.3d 1432, 1440 (9th Cir. 1994). Second, the importance of the government interests is

8  taken into account by evaluating: "(1) the severity of the crime at issue, (2) whether the

9  suspect poses an immediate threat to the safety of the officers or others, and (3) whether

10  he is actively resisting arrest or attempting to evade arrest by flight." Smith, 394 F.3d at

11  701 quoting Graham, 490 U.S. at 396.  Third, the gravity of the intrusion on the alleged

12  victim's liberty is balanced against the government's need for that intrusion. Miller v.

13  Clark Cty., 340 F.3d 959, 964 (9th Cir. 2003). The Graham factors, however, are not

14  exclusive and courts must "examine the totality of the circumstances and consider

15  whatever specific factors may be appropriate in a particular case, whether or not listed in

16  Graham." Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010) [internal quotation

17  marks and citation omitted]. Finally, "whenever practicable, a warning must be given

18  before deadly force is employed." Harris v. Roderick, 126 F.3d 1189, 1201 (9th Cir.

19  1997).

20    Here, the use of deadly force is obviously not insignificant. However, the

21  government's interest in that use of force was extremely high. First, as to the severity of

22  the crime, the initial 911 call was for a man with a firearm in a public parking lot. SUF 1-

23  4. As such, Officer Steelmon was investigating possible violations of Cal. Penal Code

24  section 25400 [crime of carrying a concealed firearm] and section 25850 [crime of

25  carrying a loaded firearm in public], which are misdemeanors in certain circumstances

26  and felonies in circumstances outlined by Section 25400(c) and Section 25850(c). "The

27  government has an undeniable legitimate interest in apprehending criminal suspects, . . .

28  and that interest is even stronger when the criminal is . . . suspected of a felony." Miller v.

-15-

Clark Cty., 340 F.3d 959, 964 (9th Cir. 2003) [citations omitted]. When dealing with a felony suspect, the "severity of the crime" factor "***strongly favors the government***." Id. [emphasis added].

Second, "the most important single element of the three specified [Graham] factors [is]: ***whether the suspect poses an immediate threat*** to the safety of the officers or others." Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005) [internal quotations and citation omitted] [emphasis added]. Assessing the threat posed by a suspect requires an evaluation of whether the totality of the circumstances facing the officer from the perspective of a reasonable officer on the scene, making allowance for whether the officer is forced to make split-second decisions in a tense and rapidly evolving situation, warrant the use of such a degree of force at the time it is used. Graham, 490 U.S. at 395-97; Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001). Specifically in the context of deadly force, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," the use of deadly force is not constitutionally unreasonable. Garner, 471 U.S. at 11.

While police officers "may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed", even deadly force can be used when an armed suspect makes "a furtive movement, harrowing gesture, or serious verbal threat." Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997) and George, 736 F.3d at 838. Here, Decedent had a handgun in his waistband. SUF 2, 34, 37, 40, 43, 51-54. Decedent ignored numerous commands from both Officer Steelmon and other Officers. SUF 25, 26, 31, 34, 36, 40, 42, 45, 47. Officer Steelmon ordered Decedent to put his hands up three separate times. SUF 34, 36, 45. Officer Steelmon ordered Decedent not to move and not to reach for the gun three separate times. SUF 34, 40, 42. Immediately prior to the shooting, Decedent ignored Officer Steelmon's commands: "Don't move, don't reach for the gun.",  "Do not reach for the gun." SUF 40, 41. And Officer Steelmon's specific warning, "***I'm going to shoot you if you reach for that gun***. Don't do it". SUF 40, 41. After a couple seconds elapsed, Officer Steelmon continued

giving commands to Decedent, telling him "Hands in the air. Put your hands on top of your head now." SUF 45. Eventually yelling, "Don't do it!" immediately prior to firing when Decedent ignored the commands and warning and grabbed for the firearm. SUF 45-48.

As to the third and final prong, whether Decedent attempted to evade or flee arrest, that prong leans towards favoring the government as Decedent ignored Officer Steelmon's and the other Officers numerous commands. SUF 25-48. In sum, all three <u>Graham</u> factors decisively favor Officer Steelmon and the circumstances as a whole clearly indicate that the force used upon Decedent was objectively reasonable at the time it was used. Officer Steelmon made the split-second decision to shoot when Decedent reached for his firearm. SUF 50. Officer Steelmon reasonably feared that Decedent was pulling the gun out in order to fire it at him or his fellow Officers. SUF 49. Thus, it is unquestionable that at the time deadly force was used, Decedent posed a serious threat to Officer Steelmon with the potential to cause serious bodily injury or death if he fired his weapon at the Officer.

**V.    <u>NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE SECOND CLAIM AGAINST OFFICER STEELMON UNDER 42 U.S.C. § 1983 FOR UNLAWFUL DETENTION/FALSE ARREST</u>**

The Second Claim for Relief is for unlawful detention/false arrest under 42 U.S.C. § 1983. First and foremost, if Officer Steelmon had a reasonable articulable suspicion that criminal activity was afoot, he could detain Decedent to conduct an investigatory, "pat down" frisk, consistent with the Fourth Amendment's prohibition against "unreasonable searches and seizures." <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989) *citing* <u>Terry v. Ohio</u>, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Where a 911 call exhibits sufficient "indicia of reliability," it provides Officers with reasonable suspicion justifying a <u>Terry</u> stop. <u>Id</u>.; <u>see also</u> <u>United States v. Terry-Crespo</u>, 356 F.3d 1170, 1173-1177 (9th Cir. 2004).

1      The case of <u>Foster v. City of Indio</u>, 908 F.3d 1204, 1217 (9th Cir. 2018) is directly

2  on point. In that case, Indio Police Department received an anonymous 911 call reporting

3  a person exiting a liquor store with a concealed handgun in his right-hand pocket. The

4  caller gave specific details that they had observed first-hand, gave a physical description

5  of the person with the handgun, and gave a location of the person with the handgun. <u>Id.</u> at

6  1214-1217. The Ninth Circuit concluded that a reasonable officer "could have concluded

7  that the 911 call demonstrated 'sufficient indicia of reliability to provide reasonable

8  suspicion to make [an] investigatory stop'." <u>Id.</u> at 1214 *quoting* <u>Ala. v. White</u>, 496 U.S.

9  325, 327, 110 S. Ct. 2412 (1990).

10     Here, the call regarding an armed man later confirmed to be Decedent had several

11 indicia of reliability. First, the call was a 911 call. SUF 1-4. "A caller's use of a 911

12 number makes the tip more credible because a 911 call can be recorded and callers can be

13 traced." <u>Foster</u>, supra at 1214 *citing* <u>Florida v. J.L.</u>, 529 U.S. 266, 275-76, 120 S. Ct.

14 1375 (2000) (Kennedy, J., concurring) and <u>Terry-Crespo</u>, supra at 1175-76. Indeed, the

15 phone number of the reporting party appears in the CAD report here and the caller was

16 identified and interviewed. SUF 1-3. In addition, 911 calls are more credible because the

17 police must take 911 emergency calls seriously and respond with dispatch. <u>See</u> <u>Terry-</u>

18 <u>Crespo</u>, 356 F.3d at 1176. Further, the 911 caller here "claimed eyewitness knowledge"

19 of the handgun, described the location, color and type of vehicle the man with the firearm

20 was sitting in. <u>Foster</u>, supra at 1214; <u>see also</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 234, 103

21 S.Ct. 2317 (1983) [stating that the tipster's "detailed description of alleged wrongdoing,

22 along with a statement that the event was observed first-hand, entitles his tip to greater

23 weight than might otherwise be the case"]; SUF 1-4, 14. Indeed, the evidence shows the

24 call ***was*** reliable because when Officer Steelmon arrived, there was only a single dark

25 gray pick-up truck in front of CVS and it was the truck in which Decedent was sitting

26 with a firearm. SUF 13-14.

27     Also, as noted in <u>Foster</u>, a reasonable officer here could have concluded that the

28 911 call provided information on potential illegal activity because "California law

-18-

"generally prohibits carrying concealed firearms in public, whether loaded or unloaded." Foster, supra at 1216 *citing* Peruta v. Cty. of San Diego, 824 F.3d 919, 925 (9th Cir. 2016) [en banc] and Cal. Penal Code § 25400 [crime of carrying a concealed firearm], § 25850 [crime of carrying a loaded firearm in public]. More importantly, Penal Code section 25850(b) specifically permits officers to examine a firearm "in order to determine whether or not a firearm is loaded for the purpose of enforcing [Section 25850]." Thus, a 911 call related to a firearm in public "raises a reasonable suspicion of potential criminal activity, even if the tip does not state that the person is carrying the firearm illegally or is about to commit a crime." Foster, supra at 1215.

"Moreover, the Supreme Court has long held that even factors consistent with innocent conduct may give rise to reasonable suspicion." Foster, supra at 1216 *citing* United States v. Arvizu, 534 U.S. 266, 274, 122 S. Ct. 744 (2002) and United States v. Sokolow, 490 U.S. 1, 9, 109 S. Ct. 1581 (1989). Additionally, "the knowledge of the dispatcher is imputed to the officers in the field when determining the reasonableness of the Terry stop." United States v. Torres, 534 F.3d 207, 210 (3rd. Cir. 2008). For all these reasons, it is without question that Officer Steelmon had a reasonable articulable suspicion that Decedent was involved in criminal activity such as they could detain him to conduct an investigatory pat down and/or inspection of his weapon.

As to false arrest, Decedent was not arrested prior to the shooting. The Supreme Court and the Ninth Circuit court have permitted limited intrusions on a suspect's liberty during a Terry stop to protect the officer's safety and have held that the use of force does not convert the stop into an arrest if it is justified by a concern for the officer's personal safety. See United States v. Hensley, 469 U.S. 221, 235-36, 105 S. Ct. 675 (1985); Terry v. Ohio, 392 U.S. 1, 24, 88 S. Ct. 1868, 1881 (1968). Specifically, courts have permitted making individuals lie on the pavement and holding them at gunpoint [United States v. Alvarez, 899 F.2d 833, 838 (9th Cir. 1990); United States v. Buffington, 815 F.2d 1292, 1300 (9th Cir. 1987); People v. Celis, 33 Cal. 4th 667, 675 (2004)], placing individuals in a police car [U.S. v. Parr, 843 F.2d 1228, 1231 (9th Cir. 1988)] and handcuffing detained

-19-

1   persons [People v. Bowen, 195 Cal. App. 3d 269, 272-274 (1987); U.S. v. Bautista 684

2   F.2d 1286, 1289-1290 (9th Cir. 1982); Haynie v. County of Los Angeles (9th Cir. 2003)

3   339 F.3d 1071, 1077] all without converting a detention into an arrest.

4          Further, the evidence shows that there was also no post-shooting arrest as Vasquez

5   was already deceased as is obvious in each of the Officers' BWC footage. Further, had

6   Decedent survived, A claim for false arrest is only cognizable under Section 1983 as a

7   violation of the Fourth Amendment if the arrest was without probable cause or other

8   justification. Dubner v. City and County of San Francisco, 266 F.3d 959, 964-65 (9th Cir.

9   2001). Here, the evidence shows that Officer Steelmon clearly had probable cause to

10  arrest Decedent for Penal Code section 241 [assault on an officer] or section 245 [assault

11  with a deadly weapon]. For all these reasons, the Second Claim fails as a matter of law.

12

13  **VI.    NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE**

14  **FOURTH CLAIM AGAINST OFFICER STEELMON UNDER 42 U.S.C. §**

15  **1983 FOR INTERFERENCE WITH FAMILIAL RELATIONSHIP**

16         Plaintiffs' Fourteenth Amendment claims require a much higher standard of proof

17  than the "reasonableness" standard for Fourth Amendment claims. Under the Fourteenth

18  Amendment, "only official conduct that 'shocks the conscience' is cognizable as a due

19  process violation." Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir.2008). Conscience-

20  shocking actions are those taken with (1) "deliberate indifference" or (2) a "purpose to

21  harm . . . unrelated to legitimate law enforcement objectives." Id. The lower "deliberate

22  indifference" standard only applies to circumstances where "actual deliberation is

23  practical." Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010); see also Lewis, 523

24  U.S. at 851.  However, in circumstances where an officer cannot practically deliberate,

25  such as where "a law enforcement officer makes a snap judgment because of an

26  escalating situation, his conduct may only be found to shock the conscience if he acts

27  with a purpose to harm unrelated to legitimate law enforcement objectives." Wilkinson,

28  610 F.3d at 554.

-20-

The more stringent "purpose to harm" standard is applicable to the case at hand because it is applied in situations where the police "have obligations that tend to tug against each other" and must make decisions "in haste, under pressure, and frequently without the luxury of a second chance." <u>Lewis</u>, 523 U.S. at 853. "Perhaps most telling is the [<u>Lewis</u>] Court's description of the dilemma of a police officer who must make a "split-second" decision whether to pursue a suspect". <u>Onossian v. Block</u>, 175 F.3d 1169, 1171 (9th Cir. Cal. 1999). Deliberation is impractical when dealing with "fast paced circumstances presenting competing public safety obligations." <u>Porter</u>, 546 F.3d at 1139.

The situation involving Decedent was one in which Officer Steelmon faced an "evolving set of circumstances that took place over a short time period necessitating fast action and presenting obligations that tend to tug against each other'" as opposed to a "controlled situation." <u>Porter</u>, 546 F.3d at 1139 [internal citations omitted]. From the time that Officer Steelmon saw that Decedent had a firearm in his waistband and yelled "Gun, gun, gun" to the time the single shot was fired was 42 seconds. SUF 34-48 During that 42 seconds, Officer Steelmon gave Decedent multiple commands and faced split-second decisions in a situation that escalated extremely rapidly. SUF 34-48 A mere 27 seconds elapsed between the time Officer Steelmon warned Decedent that he would be shot if he touched the gun to the time Officer Steelmon actually fired. SUF 40-48 Officer Steelmon did "not have the luxury of delay" and instead had "precious little time for deliberation". Indeed, Here, Officer Steelmon made the decision to fire in the split second that Decedent gripped the gun in his waistband. SUF 47, 50. Accordingly, Officer Steelmon's actions must be judged under the "purpose to harm" standard.

In order to prove that Officer Steelmon's actions shock the conscience under the purpose to harm standard of culpability, Plaintiffs must prove that his purpose was "to cause harm unrelated to the legitimate object of arrest." <u>Lewis</u>, 523 U.S. at 836. "More specifically, '[i]t is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability under § 1983 . . . .'." <u>Porter v. Osborn</u>, 546 F.3d 1131, 1140 (9th Cir. 2008) *citing* <u>Davis v.</u>

1  Township of Hillside, 190 F.3d 167, 172 (3d Cir. 1999). As discussed above, the

2  undisputed facts establish that Officer Steelmon's conduct was related to the legitimate

3  law enforcement objectives of investigating a man armed with a gun in a public parking

4  lot. SUF 1-4. As such, Plaintiffs cannot maintain a claim under the Fourteenth

5  Amendment and summary judgment is appropriate.

6

7  **VII.     OFFICER STEELMON IS ENTITLED TO QUALIFIED IMMUNITY AS**

8            **TO THE FIRST THROUGH FOURTH CLAIMS**

9            Even if a Plaintiffs have succeeded in alleging a deprivation of a constitutional

10 right, they must still show that the constitutional right at issue was "clearly established"

11 in order to escape the application of qualified immunity.  Saucier v. Katz, 533 U.S. 194,

12 201, 121 S.Ct. 2151 (2001); Camarillo v. McCarthy,  998 F.2d 638, 639 (9th Cir. 1993).

13 When considering a claim of qualified immunity, courts engage in a two-part inquiry: do

14 the facts show that the defendant violated a constitutional right, and was the right clearly

15 established at the time of the defendant's purported misconduct? Delia v. City of Rialto,

16 621 F.3d 1069, 1074 (9th Cir. 2010) *quoting* Pearson v. Callahan, 555 U.S. 223, 231-32,

17 129 S. Ct. 808; 172 L. Ed. 2d 565 (2009).

18            "A negative answer [of either prong] ends the analysis, with qualified immunity

19 protecting the defendants from liability." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir.

20 2002). A court may however exercise its discretion in reaching the second prong first,

21 which is solely a question of law. Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010);

22 Brosseau v. Haugen, 543 U.S. 194, 201-02, 125 S. Ct. 596; 160 L. Ed. 2d 583 (2004).

23 More importantly, police officers are presumed to be protected by qualified immunity.

24 See Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994).  "To overcome this

25 presumption [of qualified immunity protection], a plaintiff must show that the officer's

26 conduct was 'so egregious that any reasonable person would have recognized a

27 constitutional violation.'" Id. [internal citations omitted]. The standard is a demanding

28 one. The contours of a right must be "sufficiently clear that *every* reasonable official

-22-

1  would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563

2  U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) [emphasis added]. Thus, the

3  standard is not whether clearly established law *supported* the officer's use of force, rather

4  it is whether an officer's conduct was *prohibited* by clearly established law.

5       The Supreme Court has repeatedly stressed the importance of qualified immunity,

6  and recently reemphasized that importance in the case of White v. Pauly, 580 U.S. 73,

7  137 S. Ct. 548, 196 L. Ed. 2d 463 (2017). In White, the Supreme Court addressed the

8  denial of qualified immunity to police officers on a Fourth Amendment excessive force

9  claim by the Tenth Circuit. The Supreme Court began by stating that "qualified immunity

10  attaches when an official's conduct 'does not violate clearly established statutory or

11  constitutional rights of which a reasonable person would have known.'" White, at *551

12  *citing* Mullenix v. Luna, 577 U. S. 7136 S. Ct. 305; 193 L. Ed. 2d 255, 257 (2015).

13       Further, the Court has stated that while "case law 'does not require a case directly

14  on point' for a right to be clearly established, 'existing precedent must have placed the

15  statutory or constitutional question *beyond debate*.'" Id. [emphasis added]. Concluding,

16  "[i]n other words, immunity protects 'all but the plainly incompetent or those who

17  knowingly violate the law.'" Id. The Court also emphasized the importance of the

18  qualified immunity doctrine saying it is "important to society as a whole" noting that

19  qualified immunity "is effectively lost if a case is erroneously permitted to go to trial."

20  White, 580 U. S. at 77-78.

21       The Supreme Court in White admonished the federal Circuit Courts stating: "In

22  the last five years, this Court has issued a number of opinions reversing federal courts in

23  qualified immunity cases." White, 580 U. S. at 79. The White Court then continued

24  "[t]oday, it is again necessary to reiterate the longstanding principle that 'clearly

25  established law' should not be defined 'at a high level of generality'." White, 580 U.S. at

26  79 *citing* Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011). The Supreme Court found that

27  the Tenth Circuit had misunderstood the clearly established analysis in that it "relied on

28  Graham, Garner, and their Court of Appeals progeny, which lay out excessive-force

-23-

1  principles at only a general level" and concluded that general statements of the law are
2  not inherently incapable of giving fair and clear warning to officers and that "<u>Garner</u> and
3  <u>Graham</u> do not by themselves create clearly established law outside an obvious case."
4  <u>White</u>, 580 U.S. at 80.

5      In the case of <u>Kisela v. Hughes</u>, 138 S. Ct. 1148 (2018), the Supreme Court
6  overturned the Ninth Circuit and warned lower courts that they must not define "clearly
7  established" law with a high level of generality in deciding whether police officers are
8  entitled to qualified immunity. In reversing, the Supreme Court began by noting: "This
9  Court has repeatedly told courts—and the Ninth Circuit in particular—not to define
10 clearly established law at a high level of generality." *Id.* at 1152 [internal citations
11 omitted]. The Court then explained that the qualified immunity doctrine is particularly
12 important in the Fourth Amendment context "where the Court has recognized that it is
13 sometimes difficult for an officer to determine how the relevant legal doctrine, here
14 excessive force, will apply to the factual situation the officer confronts." *Id.* Accordingly,
15 "[u]se of excessive force is an area of the law in which the result depends very much on
16 the facts of each case, and thus police officers are entitled to qualified immunity unless
17 existing precedent squarely governs the specific facts at issue." Id. at 1153 [internal
18 citations omitted].

19     Here, there is no legal precedent that "squarely governs" the specific facts of this
20 case. The Officers announced their presence as police officer as soon as they approached
21 the vehicle. Officers Steelmon gave a number of commands to Decedent including telling
22 him "Don't move, don't reach for the gun.",  "Do not reach for the gun." And explicitly
23 warning, "I'm going to shoot you if you reach for that gun. Don't do it". After a couple
24 seconds elapsed, Officer Steelmon continued giving commands to Decedent, telling him
25 "Hands in the air. Put your hands on top of your head now." Eventually yelling, "Don't
26 do it!" immediately prior to firing when Decedent ignored the commands and warning
27 and grabbed for the firearm. There is no Ninth Circuit, or Supreme Court case, wherein
28 the court holds that an officer who sees a suspect make a movement toward what the

officer knows is a gun, after numerous commands and an explicit warning, must wait
before resorting to lethal force or refrain from resorting to lethal force.

To the contrary, Ninth Circuit case law "is clear that when a suspect reaches for
a gun . . . responding with deadly force does not violate the Constitution." Sabbe v.
Washington Cnty. Bd. of Commissioners, 84 F.4th 807, 828 (9th Cir. 2023). In that same
vein, the Ninth Circuit has held that when a suspect is "reasonably suspected of
being armed," even a furtive movement can "create an immediate threat" sufficient to
justify the use of deadly force. George, 736 F.3d at 838. Most relevantly, the Ninth
Circuit has told officers that it is "unquestionably reasonable" **to shoot at a suspect that
"reaches for a gun in his waistband,** or even if he reaches there for some other
reason." Cruz v. City of Anaheim, 765 F.3d 1076, 1078 (9th Cir. 2014) [emphasis
added]. In sum, Officers are not required to delay using deadly force until the moment
that a suspect poses the maximum threat. "Surely [an officer is] not required to wait and
be seriously injured or killed before exercising his judgment and bringing the situation
under control." Monroe v. City of Phoenix, 248 F.3d 851, 862 (9th Cir. 2001).

As discussed at length above, Decedent suffered no constitutional violation of any
sort. However, assuming arguendo this Court were to find that a constitutional violation
*had* occurred, Officer Steelmon would nonetheless be entitled to summary judgment on
the grounds of qualified immunity because the rights alleged by Plaintiffs were anything
but clearly established at the time of the incident. In fact, not only is there a lack of law
*prohibiting* Officer Steelmon's conduct, there is a significant number of cases *supporting*
it.

## VIII.  NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE EIGHTH CLAIM AGAINST OFFICER STEELMON FOR BATTERY

In California, a claim of battery against a peace officer requires proof of
unreasonable conduct on the part of the officer. See, e.g., Munoz v. City of Union City,
120 Cal.App.4th 1077, 1102 (2004); Edson v. City of Anaheim, 63 Cal.App.4th 1269,

1272 (1998); Grundt v. City of Los Angeles, 2 Cal.3d 575, 587 (1970). Because Officer Steelmon's conduct here was reasonable as discussed at length above, the Eighth Claim fails.

## IX.    NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE NINTH CLAIM AGAINST OFFICER STEELMON FOR NEGLIGENCE

To establish a claim for negligence against Officer Steelmon, Plaintiffs must demonstrate that (1) Officer Steelmon had a legal duty to use due care; (2) that Officer Steelmon breached that duty; and that (3) the breach was the proximate or legal cause of the resulting injury to Decedent. See Toomey v. Southern Pac. R. Co. (1890) 86 Cal. 374, 381. Further, what reasonable means differs in battery and negligence contexts. See lso Hernandez v. City of Pomona, 46 Cal.4th 501, 514 (2009). In short, though the ultimate use of force may be reasonable under the circumstances, an Officer's pre-shooting conduct must also be evaluated to determine whether the Officer was negligent under state law. See Grudt v. Los Angeles, 2 Cal. 3d 575, 587 (1970). The law of negligence does not require officers to choose the "'most reasonable' action or the conduct that is the least likely to cause harm," so long as their conduct falls "within the range of conduct that is reasonable under the circumstances." Hayes v. Cty. of San Diego, 57 Cal. 4th 622, 632 (2013) [citation omitted].

Here, while driving to the call, Officers Steelmon and Tamate discussed the details of the call and tactics. SUF 7. Officers Steelmon and Tamate were also very familiar wih each other's tendencies, communication styles, and tactical positioning having worked together on and off for 13 years. SUF 8 Officers Steelmon and Tamate also discussed tactical positioning of their police cruiser and a plan of approach. SUF 16, 17. Prior to approaching Vasquez's vehicle, the Officers decided that they would "push up and clear" the vehicle on the passenger side and that Officer Steelmon would be "point" as he was armed with the shotgun. SUF 23. Officer Steelmon attempted to obtain compliance from Decedent multiple times with Officer Tamate also attempting to obtain compliance in

Spanish. SUF 26, 31, 32, 34-37, 40, 42, 45. Officer Steelmon explicitly warned Decedent that he would be shot if he grabbed for the firearm. SUF 40. In short, the officers "were methodical and engaged in reasonable exercises of judgment in their pre-shooting conduct." See Smith v. Cty. of Butte, 2017 U.S. Dist. LEXIS 65335, at *50-53 (E.D. Cal. Apr. 28, 2017).

## X. NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE TENTH CLAIM AGAINST OFFICER STEELMON FOR NEGLIGENT INFLICTION FOR EMOTIONAL DISTRESS

Under California law, Negligent Infliction of Emotional Distress claims allow a plaintiff to recover damages for emotional distress "[i]n the absence of physical injury or impact to the plaintiff himself" if the plaintiff: "(1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." Thing v. La Chusa, 48 Cal.3d 644, 647. Here, the video evidence conclusively establishes that Plaintiff Jose Vasquez Lopez was not aware Decedent was being injured at the time the shot was fired.

Plaintiff Jose Vasquez Lopez was completely limp as he was pulled out of the truck, pulled further from the truck and handcuffed and his eyes were closed throughout. SUF 39. Plaintiff Jose Vasquez Lopez made no movement in between the time he was handcuffed until the shot was fired and instead remained on his stomach with his eyes closed. SUF 55 Plaintiff Jose Vasquez Lopez did not have any physical reaction to the gun shot, did not move or flinch, did not open his eyes and remained in the identical position as he had been since he had been handcuffed. SUF 56. In deposition, Plaintiff Jose Vasquez Lopez first testified that he did not remember anything after falling asleep in the truck. Ex. "C" at p. 43:3-5. Then he testified that he was dragged from the truck to a laundromat, handcuffed and then unhandcuffed. Id. at p. 43:13-25, p. 44:1-3, 17-19, p.45:2-5.

Finally, he testified: "Like I said, when I heard the shot, I knew they had killed him. But they didn't arrest me right there and then so I actually went back to get him….So when -- when I arrived at the truck, I saw him that he was in the driver seat and he doesn't drive. So when I arrived, I saw him sleeping and I said, oh, well, we'll just -- we'll just stay here. And then when the police came and they dragged me out. I could still see him. And when I heard the shots is when -- it's not like I wanted to go around the truck, but I did go around and I saw him and I could still hold -- and I was still holding his hand and I thought he was just drunk but no, he was dead." Id. at p. 45:11-14, 25; p. 46:1-10. Counsel clarified: "So after you were taken out of the truck, you went around the truck to the driver side and you were holding your brother's hand; is that correct?" to which Plaintiff Jose Vasquez Lopez testified: "Yes, I did go around and I held his hand because I thought that he was drunk, but no, he was already dead." Id. at p. 46:11-16. Counsel again clarified: "And when you were holding his hand, the police were there?" to which Plaintiff Jose Vasquez Lopez testified: "Yes." Id. at p. 46:17-19.

In ruling on a motion for summary judgment, the Court should only draw *reasonable* inferences in favor of the nonmoving party to the extent supportable by the record. Scott v. Harris, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 1776 (2007). Where there is objective video evidence, facts should be construed in the light established by the objective video evidence. Id. at 380. More specifically, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Estate of Lopez v. Gelhaus, 871 F.3d 998, 1008 (9th Cir. 2017) *citing* Scott, 550 U.S. at 380-81 [addressing video evidence utterly discrediting a party's version of events]. Moreover, the non-moving party is not entitled to all merely possible inferences, only the justifiable, reasonable inferences. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); Villarimo v. Aloha Island Air, Inc., 281 F. 3d 1054, 1065 fn. 10 (9th Cir. 2002). Plaintiff Jose Vasquez Lopez's testimony is demonstrably false. He made no movement when the shot was fired

-28-

and certainly was not holding his brother's hand after the shot was fired. He was never cuffed then uncuffed then cuffed again. He was face-down, with his eyes closed. As such, he cannot establish a necessary element of the Claim – that he was aware Decedent was being injured at the time he was injured.

Further, the negligent causing of emotional distress is not an independent tort, and this tort is subsumed within negligence. Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 984-85; Burgess v. Superior Court, 2 Cal.4th 1064, 1071-72. To establish negligent infliction of emotional distress the plaintiff must prove the traditional elements of negligence: duty, breach of duty, causation and damages. Burgess, supra 2 Cal.4th at 1071-72; Friedman v. Merck & Co., 107 Cal.App.4th 454, 463. Because Officer Steelmon's conduct here was not negligent as discussed at length above, he is entitled to judgment as a matter of law as to the Tenth Claim for negligent infliction of emotional distress.

## XI.    NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE ELEVENTH CLAIM AGAINST OFFICER STEELMON FOR VIOLATION OF CIVIL CODE SECTION 52.1

Section 52.1(a) provides a cause of action where "a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals" of rights under federal or state law. Cal. Civ. Code § 52.1.

A finding of a constitutional violation in an excessive force claim is sufficient to satisfy the "threat, intimidation, or coercion" element of section 52.1. Cornell v. City & Cty. of San Francisco, 17 Cal. App. 5th 766, 800 (2017). However, the Bane Act imposes an additional requirement beyond a finding of a constitutional violation. A plaintiff must also show that an officer had a *specific intent* to violate the arrestee's right to freedom from unreasonable seizure. Id. at 801.

Here, as discussed above, the undisputed facts and video evidence decisively

DEFENDANT STEELMON'S MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

demonstrate that no constitutional violation occurred. Additionally, Plaintiffs have zero evidence that Officer Steelmon had a specific intent to violate Decedent's rights. What is apparent from the facts and evidence, is that Officer Steelmon acted reasonably to stop the threat of serious bodily injury or death posed by Decedent's actions in failing to heed Officer Steelmon's commands not to move and not to reach for the gun and ignoring Officer Steelmon's warning "I'm going to shoot you if you reach for that gun. Don't do it" and instead reaching for and grabbing the grip of the handgun. Thus, the Eleventh Claim fails.

## XII.   **CONCLUSION**

Based on the forgoing, the Court should grant Defendant, Officer Sean Steelmon's, Motion for Summary Judgment and/or Partial Summary Judgment and enter judgment in its favor and against Plaintiffs.

Dated:      February 27, 2026               Respectfully submitted,

                                            JONES MAYER

                                            By:*/s/Denise Lynch Rocawich*
                                            JAMES R. TOUCHSTONE
                                            DENISE LYNCH ROCAWICH
                                            Attorneys for Sean Steelmon