**LAW OFFICES OF DALE K. GALIPO**
Dale K. Galipo (SBN 144074)
dalekgalipo@yahoo.com
Benjamin S. Levine (SBN 342060)
blevine@galipolaw.com
21800 Burbank Blvd., Suite 310
Woodland Hills, CA 91367
Tel: (818) 347-3333
Fax: (818) 347-4118

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NELSON VASQUEZ, individually and as successor-in-interest to Decedent, Oscar Vasquez Lopez; DAYLIN VASQUEZ, individually and as successor-in-interest to Decedent, Oscar Vasquez Lopez; LUSSY VASQUEZ, individually and as successor-in-interest to Decedent, Oscar Vasquez Lopez; OSCAR VASQUEZ, individually and as successor-in-interest to Decedent, Oscar Vasquez Lopez; K.V., by and through her guardian ad litem, Daylin Vasquez, individually and as successor-in-interest to Decedent, Oscar Vasquez Lopez; A.V., by and through his guardian ad litem, Daylin Vasquez, individually and as successor-in-interest to Decedent, Oscar Vasquez Lopez; and JOSE VASQUEZ LOPEZ, individually,

Plaintiffs,

v.

CITY OF LOS ANGELES; SEAN STEELMON; and DOES 2 through 10, inclusive,

**Case No. 8:24-cv-02421-FLA-JDE**

*Hon. Fernando L. Aenlle-Rocha*

**PLAINTIFFS' RESPONSE TO DEFENDANT SEAN STEELMON'S STATEMENT OF UNCONTROVERTED FACTS AND ADDITIONAL UNDISPUTED MATERIAL FACTS**

*[Filed concurrently with Plaintiffs' Memorandum of Points and Authorities in Opposition to Defendant Sean Steelmon's Motion for Summary Judgment and/or Partial Summary Judgment of Issues; Declaration of Benjamin S. Levine and Exhibits thereto; Declaration of Daylin D. Vasquez; and Declaration of Jeffrey J. Noble]*

Hearing Date: April 3, 2026
Time: 1:30 p.m.
Crtm: 6B

Defendants.

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| 1. On October 7, 2023, at approximately 12:51 a.m., a 911 call was made to LAPD's Communications Division.<br><br>Ex. B; Declaration of Steelmon ("Decl. Steelmon") at ¶¶ 2-3; | Disputed to extent it implies the officers heard the 911 call itself. 911 calls are not broadcast to officers; instead, dispatch relays details of the call to officers via radio.<br><br>Levine Decl., Ex. 3 (Deposition of David Mirzoyan ("Mirzoyan Depo.")) at 13:16-14:15. |
| 2. The caller stated there was a man armed with a gun inside of a pickup truck parked at CVS at Sherman Way and Variel Avenue in the City of Los Angeles.<br><br>Ex. B; Decl. Steelmon at ¶¶ 2-3 | Disputed to extent it implies the officers heard the 911 call itself. 911 calls are not broadcast to officers; instead, dispatch relays details of the call to officers via radio.<br><br>*See supra*, Dispute re Fact No. 1. |
| 3. The 911 caller was no longer at the scene when Officers arrived though his phone number was included in the Computer Aided Dispatch Report and he was later identified and interviewed.<br><br>Decl. Steelmon at ¶ 3 | Undisputed. |
| 4. At approximately 12:57 a.m., a radio call was broadcast, "Any Topanga Unit, 415 man with a gun, Sherman Way and Variel. Suspect is a male seated inside a dark pickup truck parked in front of | Disputed to the extent it implies Officer Steelmon heard all of this information. Steelmon testified in deposition that the information he had prior to his arrival at the CVS parking lot was that there was a man with a gun causing a disturbance in |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| CVS holding a handgun, Code-Two, Incident 207, RD 2136."<br><br>Decl. Steelmon at ¶ 2 | *or* near a dark or gray pickup truck, but not that the man was holding a handgun.<br><br>Declaration of Benjamin S. Levine ("Levine Decl."), Ex. 1 (Deposition of Sean Steelmon ("Steelmon Depo.")) at 12:24-13:12, 44:18-23.<br><br>Otherwise undisputed. |
| 5. Defendant, Officer Steelmon and his partner Officer Tamate were at a traffic collision investigation in close proximity to Sherman Way and Variel Avenue when they heard the broadcast.<br><br>Decl. Steelmon at ¶ 4 | Disputed to the extent it implies Officer Steelmon heard the entire broadcast.<br><br>*See supra*, Dispute re Fact No. 4.<br><br>Otherwise undisputed. |
| 6. Officers Steelmon and Tamate completed their call and responded to the man with a gun radio call. Id. Sgt. John Talbot broadcast he would also respond to the call.<br><br>Decl. Steelmon at ¶ 4 | Undisputed. |
| 7. On the way to the call, Officers Steelmon and Tamate discussed the comments of the call and discussed tactics to be used in response.<br><br>Decl. Steelmon at ¶ 5 | Disputed as to "discussed tactics to be used in response." Officer Steelmon testified in deposition that the only tactics he and Officer Tamate discussed were contact and cover, and that all other tactical details "would be understood" based on their experience working together. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | Levine Decl., Ex. 1 (Steelmon Depo.) at 23:7-24:4.<br>Noble Decl.<br><br>Otherwise undisputed. |
| 8. Prior to October 7, 2023, Officers Steelmon and Tamate had worked together, on and off, for 13 years and had handled various incidents together. On October 7, 2023, Officers Steelmon and Tamate had a high degree of operational familiarity and understood each other's tendencies, communication styles and tactical positioning without the need for explicit direction.<br><br>Decl. Steelmon at ¶ 5 | Disputed as to "Officers Steelmon and Tamate … understood each other's tendencies, communication styles and tactical positioning without the need for explicit direction." Although each of these officers testified that they understood each other's tactical positioning without the need for discussion, Steelmon testified that it was understood that he would be both the contact and cover officer because he grabbed the shotgun, while Tamate testified that it was understood that *he* would be the contact officer because he was the one driving.<br><br>Levine Decl., Ex. 1 (Steelmon Depo.) at 31:1-3, 31:21-32:1.<br>Levine Decl., Ex. 2 (Deposition of Robert Tamate ("Tamate Depo.")) at 29:20-30:3.<br><br>Otherwise undisputed. |
| 9. Also en route to the call, Officer Steelmon took his shotgun out of the mounted rack.<br><br>Decl. Steelmon at ¶ 6 | Undisputed. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| 10. Officer Steelmon chose the shotgun because the radio call involved a man with a gun inside a vehicle, because he is a Slug Cadre member, a tactical shot -- Slug Shotgun Cadre member and Rifle Cadre member, because he was very comfortable with the weapon system and because he was more confident in returning fire should a suspect engage officers from inside the vehicle.<br><br>Decl. Steelmon at ¶ 6 | Undisputed. |
| 11. Sgt. Talbot arrived on scene first at approximately 1:00 a.m..<br><br>Ex. "G" (Talbot BWC) at 1:00:42 | Undisputed. |
| 12. As Officers Steelmon and Tamate turned northbound on Variel approaching the scene, they observed a gray GM pickup truck with an extended cab matching the description of the suspect vehicle parked in front of CVS and facing southbound.<br><br>Decl. Steelmon at ¶ 9 | Disputed as to "matching the description of the suspect vehicle," including insofar as it implies the officers knew or believed the truck was the vehicle reported in the call. Officer Steelmon testified the description he had received simply referred to "a dark *or* a gray pickup truck." Officer Tamate testified that the vehicle description they received from dispatch was vague, and Steelmon and Tamate both testified that they did not know if the truck was the vehicle referenced in the call and that it may have been unrelated to the call. Tamate also testified that he saw a number of |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | other vehicles in the parking lot that could have been the vehicle referenced in the call or had similar descriptions.<br><br>Levine Decl., Ex. 1 (Steelmon Depo.) at 27:12-20, 37:9-14, 44:18-23, 45:1-4. Levine Decl., Ex. 2 (Tamate Depo.) at 21:9-15, 25:8-16, 33:23-34:1, 34:6-9, 69:22-23.<br><br>Otherwise undisputed. |
| 13. This vehicle was later determined to have Decedent Oscar Vasquez Lopez and Plaintiff Jose Vasquez Lopez as occupants.<br><br>Decl. Steelmon at ¶ 9 | Undisputed. |
| 14. There were no other vehicles matching the suspect vehicle description in front of the CVS.<br><br>Decl. Steelmon at ¶ 9; Ex. "G" (Talbot BWC) at 1:02:22-1:02:35 | Disputed. Officer Tamate testified that he saw a number of other vehicles in the parking lot that could have been the vehicle referenced in the call or had similar descriptions.<br><br>Levine Decl., Ex. 2 (Tamate Depo.) at 21:9-15, 33:23-34:1. |
| 15. As they approached in their vehicle, Officer Steelmon attempted to see into the front window to determine whether the truck had any occupants, but was unable to determine that.<br><br>Decl. Steelmon at ¶ 10 | Disputed to extent it implies Officers Steelmon and Tamate "approached" the truck prior to parking and exiting their police vehicle. Steelmon testified that when travelling to the CVS parking lot, he and Tamate drove eastbound on Sherman Way before turning left to travel northbound on Variel Avenue, |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | before making a right turn into the parking lot, so that they did not pass in front of the vehicle. Regarding attempting to view into the front of the vehicle, Steelmon testified that they only "tried to look from a distance" into the vehicle while still on Variel Avenue, before turning into the parking lot and parking behind the truck.<br><br>Levine Decl., Ex. 1 (Steelmon Depo.) at 18:12-19:5.<br><br>Otherwise undisputed. |
| 16. Officer Steelmon informed Officer Tamate that he could not determine whether the truck had occupants so they discussed and formulated a plan of approach.<br><br>Decl. Steelmon at ¶ 10 | Disputed to extent it implies Officer Steelmon made any meaningful attempt to assess whether the truck was occupied before Officer Tamate parked behind it and they exited their police vehicle.<br><br>*See supra*, Dispute re Fact No. 15.<br><br>Otherwise undisputed. |
| 17. Officers Steelmon and Tamate decided to approach from the rear of the pickup truck and to initiate a high risk stop.<br><br>Decl. Steelmon at ¶ 10 | Disputed as to "high risk stop." Officers Steelmon and Tamate both testified that this did *not* qualify as a high risk stop, given that they did not stop the vehicle, which was already stopped; and they did not know if anyone was inside or see any indication that the vehicle was occupied prior to approaching; and they had not confirmed or received detailed information that a gun was in fact inside. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | Levine Decl., Ex. 1 (Steelmon Depo.) at 26:19-27:6.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 32:13-23.<br><br>Otherwise undisputed. |
| 18. Officers Steelmon and Tamate arrived approximately a minute after Sgt. Talbot.<br><br>Ex. "F" (Steelmon BWC) at 1:01:10-1:01:28 | Undisputed. |
| 19. Two additional Officers, Phan and Mirzoyan, arrived roughly a minute after Officers Steelmon and Tamate.<br><br>Ex. "F" (Steelmon BWC) at 1:02:01 | Undisputed. |
| 20. Officer Tamate positioned their police vehicle approximately 20 feet behind the pickup truck.<br><br>Ex. "F" (Steelmon BWC) at 1:01:43; Decl. Steelmon at ¶ 11 | Undisputed. |
| 21. The back window of the suspect vehicle had dark tint as did the rear extended cab windows preventing the Officers from seeing inside those windows.<br><br>Ex. "F" (Steelmon BWC) at | Disputed that the officers were prevented from seeing, or unable to see, through the rear windows into the vehicle. The rear passenger window was propped open, and Officers Steelmon, Tamate, and Mirzoyan could see into that open window, shined lights inside, |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| 1:01:43-1:02:45; Decl. Steelmon at ¶ 11 | and were able to see an occupant in the front passenger seat who appeared to be passed out, and they relayed this information to each other at the time.<br><br>Levine Decl., Ex. 1 (Steelmon Depo.) at 39:23-40:11, 40:17-21.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 31:14-25.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 25:12-24, 26:3-11.<br>Levine Decl., Ex. 5 (Robert Tamate Body-Worn Camera Video ("Tamate BWC")) at 01:02:39-59.<br>Def. Ex. E (David Mirzoyan Body-Worn Camera Video ("Mirzoyan BWC")) at 1:02:40-49.<br><br>Undisputed that the rear windshield and rear side windows were tinted. |
| 22. Due to the call remarks stating the man was seen with a firearm, Officer Steelmon exited the vehicle with the shotgun, Officer Tamate unholstered his sidearm and Officers Phan and Mirzoyan both unholstered their sidearms.<br><br>Decl. Steelmon at ¶ 11; Ex. "F" (Steelmon BWC) at 1:01:43-1:02:05; Ex. "G" (Talbot BWC) at 1:02:35-1:02:42 | Undisputed. |
| 23. Prior to approaching Vasquez's | Undisputed. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| vehicle, the Officers decided that they would "push up and clear" the vehicle on the passenger side and that Officer Steelmon would be "point" as he was armed with the shotgun.<br><br>Ex. "E" (Mirzoyan BWC) at 1:02:26-1:02:36 | |
| 24. Officer Steelmon was the first officer to move toward the suspects' pickup truck holding his shotgun at a low ready with his finger on the safety. Officer Mirzoyan followed behind Officer Steelmon with his pistol at a low ready.<br><br>Ex. "E" (Mirzoyan BWC) at 1:02:26-1:02:36; Ex. "G" (Talbot BWC) at 1:02:31-1:02:42 | Disputed that Officer Steelmon's finger was on the safety, which is not established by the cited evidence.<br><br>Otherwise undisputed. |
| 25. Officer Steelmon yelled at the passenger, Plaintiff Jose Vasquez Lopez, to exit the vehicle; however, there was no reaction or movement.<br><br>Ex. "E" (Mirzoyan BWC) at 1:02:47-1:02:59 | Disputed to extent it implies this statement, made in English, was comprehensible to Plaintiff Jose Vasquez Lopez ("Jose") or decedent Oscar Vasquez Lopez ("Oscar"). Jose has a very limited understanding of English, and Oscar did not speak or understand English. The officers also recognized that the two men were Hispanic and may have not spoken or understood (or likely did not speak or understand) English, and Officer Tamate |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | testified that he knew they were in a largely Spanish-speaking part of town.<br><br>Levine Decl., Ex. 1 (Steelmon Depo.) at 52:24-53:1, 53:2-54:1, 65:3-5.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 36:6-8, 59:4-9, 60:15-19, 61:20-24, 62:21-25.<br>Def. Ex. C (Deposition of Jose Vasquez Lopez ("Jose Depo.")) at 2:21-22, 43:8-9 (deposition translated by Spanish interpreter).<br>Def. Ex. E (Mirzoyan BWC) at 01:02:48-01:03:20 (depicting Officer Tamate issuing Spanish commands even before the officers had looked through the front passenger door of the vehicle and ascertained that the two occupants were Hispanic, and issuing commands only in Spanish thereafter).<br>Declaration of Daylin D. Vasquez ("Daylin Decl.") ¶¶ 5-9.<br><br>Further disputed to extent it implies deliberate noncompliance, as both Jose and Oscar were asleep and inebriated, which the officers recognized at the time.<br><br>Levine Decl., Ex. 1 (Steelmon Depo.) at 42:6-23, 45:20-46:10, 46:19-25, 52:16-23, 72:16-23.<br>Levine Decl., Ex. 2 (Tamate Depo.) at |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | 35:17-36:1, 36:16-25, 37:25-40:14, 40:24-41:7.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 26:3-11, 31:1-14.<br>Levine Decl., Ex. 4 (Deposition of Phillip Phan ("Phan Decl.")) at 29:12-31:3.<br>Def. Ex. E (Mirzoyan BWC) at 01:02:40-01:03:37.<br>Def. Ex. F (Sean Steelmon Body-Worn Camera Video ("Steelmon BWC")) at 01:03:12-35 (depicting Officer Tamate remarking that the men were "hammered" and stating, "these guys are out").<br>Levine Decl., Ex. 6 (Autopsy and Toxicology Report excerpts) at 5 (showing Oscar had a blood-alcohol content between 0.367 and 0.434).<br>Levine Decl., Ex. 7.<br><br>Otherwise undisputed. |
| 26. Officer Tamate gave commands to Plaintiff Jose Vasquez Lopez in Spanish to exit the vehicle and identified the Officers as police. Officer Tamate also hit the side of the truck with his hand, making a loud pounding sound.<br><br>Ex. "E" (Mirzoyan BWC) at 1:02:47-1:02:59 | Disputed to extent it implies these commands were comprehensible to Jose or Oscar, or that any failure by them to exit the vehicle at that time was deliberate, as both were asleep and inebriated, which the officers recognized at the time.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Otherwise undisputed. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| 27. Officer Steelmon moved forward positioning himself parallel to the passenger side door of the truck. Officer Steelmon used the light on his shotgun to illuminate the interior.<br><br>Ex. "E" (Mirzoyan BWC) at 1:02:57-1:03:08 | Undisputed. |
| 28. Officer Mirzoyan remained second and positioned himself to Officer Steelmon's left, keeping his pistol at a low-ready.<br><br>Ex. "E" (Mirzoyan BWC) at 1:02:57-1:03:08 | Undisputed. |
| 29. Officer Tamate opened the truck's passenger side door and backed away.<br><br>Ex. "E" (Mirzoyan BWC) at 1:02:57-1:03:08 | Undisputed. |
| 30. Officer Steelmon saw two occupants in the vehicle and both appeared to be passed out.<br><br>Decl. Steelmon at ¶ 11 | Disputed to extent "appeared to be" implies Jose and Oscar were not in fact asleep, or that there was any lack of clarity about this. Officers Steelmon, Mirzoyan, and Tamate all recognized that the two men were passed out, as Mirzoyan and Tamate repeatedly remarked at the time, which is captured on body-worn camera video.<br><br>*See supra*, Dispute re Fact No. 25. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | Otherwise undisputed. |
| 31. Additional commands were given, in Spanish, to exit the vehicle and again Officer Tamate identified the Officers as police.<br><br>Ex. "E" (Mirzoyan BWC) at 1:03:18-1:03:25 | Disputed to extent it implies these commands were comprehensible to Jose or Oscar, or that any failure by them to exit the vehicle at that time was deliberate, as both were asleep and inebriated, which the officers recognized at the time.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Otherwise undisputed. |
| 32. Officer Tamate grabbed Plaintiff Jose Vasquez Lopez's right wrist, shook it and gave additional commands in Spanish. Plaintiff Jose Vasquez Lopez opened his eyes but didn't respond to Officer Tamate.<br><br>Ex. "F" (Steelmon BWC) at 1:03:07-1:03:42 | Disputed to extent "didn't respond" implies Jose did not react. Jose looked toward the officers and raised his hands.<br><br>Def. Ex. E (Mirzoyan BWC) at 01:03:41-49.<br><br>Further disputed to extent "additional commands" implies these commands were comprehensible to Jose, or that any failure by him to "respond" or exit the vehicle at that time was deliberate, as he was asleep at least until after these commands were issued and was inebriated, as the officers recognized at the time.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Otherwise undisputed. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| 33. After attempting and failing to remove Plaintiff Jose Vasquez Lopez, Officer Tamate repositioned himself to the driver's side of the vehicle.<br><br>Ex. "E" (Mirzoyan BWC) at 1:03:22-1:03:44 | Undisputed. |
| 34. As Officer Tamate was reaching for the driver door handle, Officer Steelmon spotted the gun and yelled, "Gun, gun, gun!" "Don't move!" "Put your hands up now!".<br><br>Ex. "F" (Steelmon BWC) at 1:03:22-1:03:51 | Disputed to extent it implies these statements, which were made in English, were comprehensible to Oscar, who spoke and understood only Spanish, which the officers recognized may have been or was likely the case.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Otherwise undisputed. |
| 35. Decedent did not put his hands up.<br><br>Ex. "F" (Steelmon BWC) at 1:03:22-1:03:51 | Disputed. Oscar repeatedly lifted his hands, which had been in his lap.<br><br>Def. Ex. F (Steelmon BWC) at 01:03:46-01:04:08.<br><br>Further disputed to extent it implies Oscar was capable of complying with Officer Steelmon's commands, which were given in English, which Oscar did not understand, or that any alleged noncompliance was deliberate, given that Oscar was barely awake and in an intoxicated stupor, as the officers recognized at the time. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | *See supra*, Dispute re Fact No. 25. |
| 36. Steelmon then ordered "Hands in the air!"<br><br>Ex. "F" (Steelmon BWC) at 1:03:22-1:03:51 | Disputed to extent it implies these statements, which were made in English, were comprehensible to Oscar, who spoke and understood only Spanish, which the officers recognized may have been or was likely the case.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Otherwise undisputed. |
| 37. Officer Steelmon gave directions to the team of Officers telling them "Grab him, grab passenger out, rip him out. Driver's got a gun in his waistband."<br><br>Ex. "F" (Steelmon BWC) at 1:03:53-1:03:56 | Undisputed. |
| 38. Officer Tamate pulled Plaintiff Jose Vasquez Lopez out of the truck and away from the truck and handcuffed him.<br><br>Ex. "D" (Phan BWC) at 1:03:59-1:04:32 | Undisputed. |
| 39. Plaintiff Jose Vasquez Lopez was completely limp as he was pulled out of the truck, pulled further from the truck and handcuffed and his eyes were closed throughout. | Disputed that "his eyes were closed throughout," which is not established by the cited evidence. Jose's eyes are not visible for the majority of Officer Phan's body-worn camera video, which was also recorded from too far away to see |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| Ex. "D" (Phan BWC) at 1:03:59-1:04:32 | Jose's features clearly during the few moments when they are visible.<br><br>Further disputed to extent it implies Jose was not awake. Jose testified he recalled being dragged out of the truck and hearing Officer Steelmon fire, and video evidence from just before he was pulled out of the truck show his eyes open as he looked toward the officers.<br><br>Def. Ex. C (Jose Depo.) at 43:6-11, 45:9-12.<br>Def. Ex. E (Mirzoyan BWC) at 01:03:41-49.<br><br>Otherwise undisputed. |
| 40. Officer Steelmon gave additional commands to Decedent yelling "Don't move, don't reach for the gun. Do not reach for the gun!! I'm going to shoot you if you reach for that gun. Don't do it!"<br><br>Ex. "F" (Steelmon BWC) at 1:04:00-1:04:30 | Disputed to extent it implies these statements, which were made in English, were comprehensible to Oscar, who spoke and understood only Spanish, which the officers recognized may have been or was likely the case.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Further disputed to extent it implies these commands were clear or did not conflict with other commands that were issued, even assuming Oscar understood English or that the officers should have believed he did. While Officer Steelmon was making these statements in English, |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | Sergeant Talbot simultaneously stated, in broken Spanish, "Hey, pongos [sic] sus manos a–," which translates to "put your hands–" (with no object included), creating a likelihood for confusion as to (1) whether or not Oscar was supposed to do something with his hands and (2) if so, where he was supposed to put them. Given this statement's proximity to Steelmon's repeated use of the word "gun" (if he understood that word), this risked suggesting to Oscar—who was barely awake and in an intoxicated stupor—that he was in fact being asked to put his hands on the gun.<br><br>Def. Ex. G (John Talbot Body-Worn Camera Video ("Talbot BWC")) at 01:04:10-13.<br>Levine Decl., Ex. 2 (Tamate Depo) at 59:24-60:5.<br>Levine Decl., Ex. 7.<br>*See also supra*, Dispute re Fact No. 25.<br><br>Otherwise undisputed. |
| 41. Decedent is seen moving his hands around and not listening to Officer Steelmon's commands.<br><br>Ex. "F" (Steelmon BWC) at 1:04:00-1:04:30 | Disputed as to "not listening to Officer Steelmon's commands," which would require that Oscar could understand Steelmon's commands. They were given in English, which Oscar did not understand, as the officers recognized may have been or was likely the case. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | *See supra*, Dispute re Fact No. 25.<br><br>Further disputed to extent "not listening to Officer Steelmon's commands" implies Oscar was capable of complying even if he understood them. Oscar was barely awake and in an intoxicated stupor, as the officers recognized.<br><br>*See supra*, Dispute re Fact No. 25.<br>Levine Decl., Ex. 7.<br><br>Further disputed to extent "moving his hands around" implies any significant movement. The video evidence shows that Oscar kept his hands in the same general area throughout—on or just above the middle part of the top of his thighs—while appearing to rub his hands together slightly or cup them together, and slightly lowering or raising his hands over his thighs occasionally.<br><br>Def. Ex. F (Steelmon BWC) at 01:04:00-25.<br>Levine Decl., Ex. 5 (Tamate BWC) at 01:04:22-26.<br>Levine Decl., Ex. 1 (Steelmon Depo) at 73:1-13 (testifying that Oscar was putting his hands together as if drying them in a restroom air drier, or "rolling [his] fingers"). |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | Otherwise undisputed. |
| 42. Officer Steelmon again yelled at Decedent "Don't do it!"<br><br>Ex. "F" (Steelmon BWC) at 1:04:00-1:04:30 | Disputed to extent it implies Oscar could understand this command, which was made in English, which Oscar did not understand, as the officers recognized may have been or was likely the case.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Further disputed to extent it implies this command was clear or comprehensible, given that "Don't do it" is inherently vague, and given its proximity to Sergeant Talbot's contradictory command to "pongos [sic] sus manos" ("put your hands").<br><br>*See supra*, Dispute re Fact No. 40.<br><br>Otherwise undisputed. |
| 43. Officer Steelmon then advised the team, "He has a gun in his waistband, he's not listening to commands."<br><br>Ex. "F" (Steelmon BWC) at 1:04:00-1:04:30 | Disputed to extent it implies Oscar could understand Officer Steelmon's commands, which were made in English, which Oscar did not understand, as the officers recognized may have been or was likely the case.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Further disputed to extent it implies Oscar was capable of complying with commands even assuming he understood them, given that he was barely awake |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | and in an intoxicated stupor, as the officers recognized at the time.<br><br>*See supra*, Dispute re Fact No. 25. |
| 44. Decedent continued moving his hands around in front of him.<br><br>Ex. "F" (Steelmon BWC) at 1:04:00-1:04:30 | Disputed to extent "moving his hands around" implies any significant movement. The video evidence shows that Oscar kept his hands in the same general area throughout—on or just above the middle part of the top of his thighs—while appearing to rub his hands together slightly or cup them together, and slightly lowering or raising his hands over his thighs occasionally.<br><br>*See supra*, Dispute re Fact No. 41. |
| 45. Officer Steelmon commanded again "Hands in the air!" "Put your hands on top of your head now!"<br><br>Ex. "F" (Steelmon BWC) at 1:04:00-1:04:30 | Disputed to extent it implies Oscar could understand Officer Steelmon's commands, which were made in English, which Oscar did not understand, as the officers recognized may have been or was likely the case.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Further disputed to extent it implies Oscar was capable of complying with commands even assuming he understood them, given that he was barely awake and in an intoxicated stupor, as the officers recognized at the time.<br><br>*See supra*, Dispute re Fact No. 25. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | Otherwise undisputed. |
| 46. Decedent did not comply.<br><br>Ex. "F" (Steelmon BWC) at 1:04:00-1:04:30 | Disputed to extent it implies Oscar could understand Officer Steelmon's commands, which were made in English, which Oscar did not understand, as the officers recognized may have been or was likely the case.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Further disputed to extent it implies Oscar was capable of complying with commands even assuming he understood them, given that he was barely awake and in an intoxicated stupor, as the officers recognized at the time.<br><br>*See supra*, Dispute re Fact No. 25. Levine Decl., Ex. 7. |
| 47. Decedent then nodded his head once and reached his right hand towards his waistband.<br><br>Ex. "F" (Steelmon BWC) at 1:04:00-1:04:30 | Disputed to extent "nodded his head" implies Oscar understood what was being said to him, including Officer Steelmon's commands issued in English, which were made in English, which Oscar did not understand, as the officers recognized may have been or was likely the case.<br><br>*See supra*, Dispute re Fact No. 25.<br><br>Further disputed that Oscar "reached his right hand towards his waistband." The |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | video footage shows Oscar, in an obvious stupor, appearing to rub his hands together or cup them together, and occasionally lowering or raising them over his thighs, before his right hand lowers slightly, by no more than 1-2 inches, toward the middle part of the top of his right thigh, a few inches from his right knee, as if scratching his thigh or relaxing the muscles in his arm momentarily.<br><br>Levine Decl., Ex. 5 (Tamate BWC) at 01:04:21-26.<br><br>Otherwise undisputed. |
| 48. Immediately after Decedent began reaching toward his waistband, Officer Steelmon fired a single shot at Decedent.<br><br>Ex. "F" (Steelmon BWC) at 1:04:00-1:04:30 | Disputed that Oscar "reach[ed] toward his waistband."<br><br>*See supra*, Dispute re Fact No. 47.<br><br>Otherwise undisputed. |
| 49. At the time he fired, Officer Steelmon was in fear for his life, and the lives of his fellow Officers, believing that Decedent was retrieving the handgun in order to fire it at Officer Steelmon.<br><br>Decl. Steelmon at ¶ 12 | Disputed to extent it implies Oscar reached toward his waistband.<br><br>*See supra*, Dispute re Fact No. 47.<br><br>Further disputed to extent it implies Officer Steelmon's claimed subjective fear was supported by the actual circumstances he faced. The video evidence shows nothing to indicate |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | Oscar was attempting to retrieve a handgun and fire it at anyone. At the time Steelmon fired from a position to the Oscar's right, Oscar was looking to Oscar's left, *away* from Steelmon, and was obviously in an intoxicated stupor, as video makes clear and as the officers themselves recognized. It is not even clear that Oscar recognized the officers' presence in his condition. Oscar's condition also strongly indicated that he lacked any capacity to grab the handgun, draw it, load a round into the chamber, switch off the safety if the safety was on, aim it at Steelmon—who was to Oscar's right, but backward from the direction Oscar was facing at the time—and fire, even assuming he had the apparent intent to do so. Steelmon testified that he felt he had adequate cover at the "B pillar" of the truck (which separates the front passenger doorway from the rear passenger doorway) and that, if Oscar had reached for the gun and attempted to use it against Steelmon, Oscar "would have to turn his entire body around to face [him]," indicating this would have been a slow and difficult endeavor in Oscar's condition, and that Steelmon would "still have that B pillar as additional cover" because he was partially behind it, which put Steelmon nearly 180 degrees behind where Oscar |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | was facing when he was facing left. Steelmon also testified that Oscar never drew the gun, started moving it in Steelmon's direction, or pointed it at anyone. Additionally, nothing about Oscar's prior conduct or demeanor, after being woken up by yelling officers, indicates any apparent intent to draw or use the gun. California standard police officer training provides that deadly force based on a threat of harm requires that the officer be defending against an imminent threat of death or serious bodily injury to the officer or to another, and establishes that such a threat is "imminent" when, based upon the totality of the circumstances, a reasonable officer in the same situation would believe that a person has the present ability, opportunity, *and* apparent intent to immediately cause death or serious bodily injury to the officer or another person. Standard police training also provides that subjective fear or fear of future harm alone are insufficient to justify deadly force.<br><br>*See supra*, Dispute re Fact No. 41, Dispute re Fact No. 47.<br>Def. Ex. F (Steelmon BWC) at 01:04:00-27.<br>Levine Decl., Ex. 5 (Tamate BWC) at |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | 01:04:21-27.<br>Levine Decl., Ex. 1 (Steelmon Depo) at 55:24-56:2, 59:19-60:3, 63:19-64:8.<br>Noble Decl. at ¶¶ 20-29.<br>Levine Decl., Ex. 7.<br><br>Otherwise undisputed. |
| 50. Officer Steelmon made the split-second decision to shoot when Decedent reached for his firearm.<br><br>Decl. Steelmon at ¶ 12 | Disputed that Oscar reached for the firearm.<br><br>*See supra*, Dispute re Fact No. 47.<br><br>Further disputed to the extent "made the split-second decision" implies the decision to shoot was required to be made in a split-second or at all.<br><br>*See supra*, Dispute re Fact No. 49. |
| 51. Decedent indeed had a firearm in his waistband which was recovered by Officer Tamate on scene.<br><br>Decl. Steelmon at ¶ 13; Ex. "G" (Talbot BWC) at 1:04:57-1:05:13; Ex. "H" | Undisputed. |
| 52. Officer Steelmon communicated, "Gun is exposed in his waistband." Officer Tamate acknowledged Steelmon and stated, "Yeah, I got it."<br><br>Decl. Steelmon at ¶ 13; Ex. "G" (Talbot BWC) at 1:04:57-1:05:13 | Undisputed. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| 53. Officer Tamate recovered the loaded pistol from Oscar's waistband and placed it on top of the truck bed cover.<br><br>Decl. Steelmon at ¶ 13; Ex. "G" (Talbot BWC) at 1:04:57-1:05:13; Ex. "H" | Disputed to extent it implies any officer knew the gun was loaded before Officer Steelmon fired. Steelmon testified that he did not know whether it was loaded.<br><br>Levine Decl., Ex. 1 (Steelmon Depo.) at 52:7-13.<br><br>Otherwise undisputed. |
| 54. Officer Tamate went back to Oscar's waistband and recovered an additional magazine and also placed it on the truck bed cover.<br><br>Decl. Steelmon at ¶ 13; Ex. "G" (Talbot BWC) at 1:04:57-1:05:13 | Undisputed. |
| 55. Plaintiff Jose Vasquez Lopez made no movement in between the time he was handcuffed until the shot was fired and instead remained on his stomach with his eyes closed.<br><br>Ex. "D" (Phan BWC) at 1:03:59-1:04:32 | Disputed that "his eyes were closed," which is not established by the cited evidence. Jose's eyes are not visible for the majority of Officer Phan's body-worn camera video, which was also recorded from too far away to see Jose's features clearly during the few moments when they are visible.<br><br>Further disputed to extent it implies Jose was not awake. Jose testified he recalled being dragged out of the truck and hearing Officer Steelmon fire, and video evidence from just before he was pulled out of the truck show his eyes open as he looked toward the officers. |

| UNCONTROVERTED FACT AND SUPPORTING EVIDENCE (AS ASSERTED BY DEFENDANT) | DISPUTED / UNDISPUTED BY PLAINTIFFS AND SUPPORTING EVIDENCE |
|---|---|
| | *See supra*, Dispute re Fact No. 39.<br><br>Otherwise undisputed. |
| 56. Plaintiff Jose Vasquez Lopez did not have any physical reaction to the gun shot, did not move or flinch, did not open his eyes and remained in the same position as he had been since he had been handcuffed.<br><br>Ex. "D" (Phan BWC) at 1:03:59-1:04:32 | Disputed. This is not established by the cited evidence. Jose's eyes are not visible for the majority of Officer Phan's body-worn camera video, which was also recorded from too far away to see Jose's features clearly during the few moments when they are visible, or any non-obvious movement or flinches.<br><br>Further disputed to extent it implies Jose was not awake. Jose testified he recalled being dragged out of the truck and hearing Officer Steelmon fire, and video evidence from just before he was pulled out of the truck show his eyes open as he looked toward the officers.<br><br>*See supra*, Dispute re Fact No. 39. |

**PLAINTIFFS' ADDITIONAL UNDISPUTED MATERIAL FACTS**

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 57. The dispatch report did not indicate that anything had occurred involving the gun, including that it had been pointed at anyone or that any shots had been fired. | Levine Decl., Ex. 1 (Steelmon Depo) at 15:10-14.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 19:2-4, 19:10-12.<br>Levine Decl., Ex. 4 (Phan Depo.) at |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| | 13:8-16. |
| 58. The dispatch report did not indicate that anyone had been verbally threatened. | Levine Decl., Ex. 2 (Tamate Depo.) at 19:7-9. |
| 59. The dispatch report did not indicate that anyone was injured. | Levine Decl., Ex. 1 (Steelmon Depo) at 15:15-16.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 19:5-6. |
| 60. The dispatch report did not include any description of a suspect besides that he was male, including his name, height, weight, age, or clothing. | Levine Decl., Ex. 1 (Steelmon Depo) at 15:10-16.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 15:11-16:3. |
| 61. The grey pickup truck in the parking lot was parked, turned off, had no lights on, and showed no signs it was occupied. | Levine Decl., Ex. 1 (Steelmon Depo) at 20:13-24, 27:12-20, 36:2-37:14, 38:17-39:3<br>Levine Decl., Ex. 2 (Tamate Depo.) at 22:7-14, 29:15.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 20:7-20, 22:9-23:13.<br>Levine Decl., Ex. 4 (Phan Depo.) at 20:1-10. |
| 62. The officers believed the truck may not have been the one referenced in the dispatch report. | Levine Decl., Ex. 1 (Steelmon Depo) at 27:12-20, 37:9-14, 45:1-4<br>Levine Decl., Ex. 2 (Tamate Depo.) at 25:8-16, 33:23-24, 34:6-9, 69:22-23.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 20:7-20, 28:11-18. |
| 63. The officers believed the dispatch report was vague. | Levine Decl., Ex. 2 (Tamate Depo.) at 21:9-10.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 14:22-15:1.<br>Levine Decl., Ex. 4 (Phan Depo.) at 12:25-13:4. |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 64. Dispatch reports are often inaccurate. | Levine Decl., Ex. 2 (Tamate Depo.) at 34:2-5. |
| 65. The officers believed the man referenced in the dispatch report may have been elsewhere in the area. | Levine Decl., Ex. 1 (Steelmon Depo) at 27:12-20, 36:2-37:14. |
| 66. The officers knew that the area was largely Spanish-speaking. | Levine Decl., Ex. 2 (Tamate Depo.) at 59:4-12, 61:22-62:25. |
| 67. Officer Tamate knew limited Spanish. | Levine Decl., Ex. 2 (Tamate Depo.) at 59:4-20. |
| 68. Before observing anyone inside the truck, Officer Tamate began issuing commands in Spanish. | Levine Decl., Ex. 2 (Tamate Depo.) at 27:5-17. |
| 69. Through a propped-open rear window, the officers observed a man in the front passenger seat who appeared to be slumped over and asleep. | Levine Decl., Ex. 1 (Steelmon Depo) at 39:23-40:11.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 31:14-25.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 25:12-24, 26:3-11.<br>Def. Ex. E (Mirzoyan BWC) at 01:02:39-50. |
| 70. The officers looked through the window of the front passenger door, and opened that door. | Levine Decl., Ex. 1 (Steelmon Depo) at 42:6-19.<br>Def. Ex. E (Mirzoyan BWC) at 01:02:53-01:03:05. |
| 71. The officers saw two Hispanic men inside the truck. | Levine Decl., Ex. 1 (Steelmon Depo) at 53:2-4, 65:3-5.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 36:6-8.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 29:17-23.<br>Def. Ex. E (Mirzoyan BWC) at 01:03:03-14. |
| 72. The two men were asleep and | Levine Decl., Ex. 1 (Steelmon Depo) at |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| highly inebriated. | 42:16-23, 45:20-25, 46:1-10, 46:19-25, 52:16-23, 65:13-18, 72:16-23.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 35:17-36:1, 36:16-25, 37:25-40:14, 41:4-7, 42:18-43:4.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 26:3-11, 31:1-14.<br>Levine Decl., Ex. 4 (Phan Depo.) at 29:12-31:3.<br>Def. Ex. E (Mirzoyan BWC) at 01:03:03-35.<br>Levine Decl., Ex. 6 (Autopsy and Toxicology Report excerpts) at 5 (showing Oscar had a blood-alcohol content between 0.367 and 0.434).<br>Levine Decl., Ex. 7. |
| 73. The officers remarked to each other that the men appeared "drunk," were "passed out," were "hammered," and that "[t]hese guys are out!" | Def. Ex. E (Mirzoyan BWC) at 01:03:03-35.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 40:24-41:4.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 31:1-14. |
| 74. The officers did not observe any injuries or blood. | Levine Decl., Ex. 1 (Steelmon Depo) at 42:6-14.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 33:2-7, 33:14-23. |
| 75. Decedent Oscar Vasquez Lopez was Plaintiff Jose Vasquez Lopez's brother. | Def. Ex. C (Jose Depo.) 45:21-46:21. |
| 76. Oscar did not speak or understand English and spoke only Spanish. | Daylin Decl. ¶¶ 5-9.<br>Levine Decl., Ex. 1 (Steelmon Depo) at 52:24-53:1, 53:5-54:1.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 41:3-9. |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 77. The officers had no information that either of the men had any criminal history or had ever committed any act of violence. | Levine Decl., Ex. 2 (Tamate Depo.) at 71:7-25.<br>Levine Decl., Ex. 4 (Phan Depo.) at 41:14-42:1. |
| 78. Jose awoke but remained seated and looked toward the officers. | Def. Ex. E (Mirzoyan BWC) at 01:03:35-51. |
| 79. Steelmon leaned into the vehicle, then began yelling "Gun!" repeatedly and shouted commands to Oscar in English. | Def. Ex. E (Mirzoyan BWC) at 01:03:43-01:04:05. |
| 80. Steelmon did not speak Spanish. | Levine Decl., Ex. 1 (Steelmon Depo) at 16:19-22. |
| 81. Steelmon realized the vehicle's occupants may not have understood English. | Levine Decl., Ex. 1 (Steelmon Depo) at 53:5-54:1. |
| 82. Steelmon stated there was a gun in Oscar's waistband and directed Tamate to remove Jose from the vehicle, which Tamate did. | Def. Ex. E (Mirzoyan BWC) at 01:03:43-01:04:05. |
| 83. Officer Phan believed that Jose appeared unable to comply with commands on his own in his condition. | Levine Decl., Ex. 4 (Phan Depo.) at 30:9-31:3. |
| 84. The barrel and trigger of the gun was inside Oscar's waistband and not visible to the officers. | Levine Decl., Ex. 2 (Tamate Depo.) at 49:6-12. |
| 85. Oscar appeared to wake but remained in an apparent intoxicated stupor, and his eyes largely remained closed. | Def. Ex. F (Steelmon BWC) at 01:04:00-27.<br>Levine Decl., Ex. 5 (Tamate BWC) at 01:04:23-26. |
| 86. Oscar's hands were empty and he held them in front of him, over the middle part of the top of his thighs, | Def. Ex. F (Steelmon BWC) at 01:04:00-27. |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| and occasionally clasped or rubbed them together, and occasionally raised or lowered them slightly while facing forward, with his eyes closed or barely open. | |
| 87. Just after Steelmon told Oscar not to reach for the gun, Sergeant Talbot, in broken Spanish, told Oscar, "put your hands," without saying where. | Def. Ex. F (Steelmon BWC) at 01:04:10-12.<br>Def. Ex. G (Talbot BWC) at 01:04:10-13.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 59:24-60:5. |
| 88. No other command was given in Spanish after Oscar woke. | Def. Ex. E (Mirzoyan BWC) at 01:04:10-28. |
| 89. No warning was provided in Spanish that deadly force would be used if Oscar did not comply. | Def. Ex. E (Mirzoyan BWC) at 01:04:10-28.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 57:2-6. |
| 90. Steelmon said, "Get me a Spanish speaker," immediately before firing. | Def. Ex. F (Steelmon BWC) at 01:04:24-27.<br>Levine Decl., Ex. 1 (Steelmon Depo) at 53:5-10. |
| 91. Steelmon recognized that Oscar likely did not understand his English commands. | Levine Decl., Ex. 1 (Steelmon Depo) at 53:5-54:1. |
| 92. Oscar's hand then lowered again slightly, no more than an inch or two from where it had been, and Steelmon immediately fired his shotgun. | Levine Decl., Ex. 5 (Tamate BWC) at 01:04:22-28.<br>Def. Ex. F (Steelmon BWC) at 01:04:20-27. |
| 93. Steelmon's shot struck Oscar in the neck. | Def. Ex. F (Steelmon BWC) at 01:04:26-28.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 73:11-19.<br>Levine Decl., Ex. 6 (Autopsy and |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| | Toxicology Report Excerpts) at 3-4. |
| 94. At no time during the incident did Oscar touch the gun, remove it from his waistband, move it in Steelmon's direction, point it at anyone, or fire it. | Levine Decl., Ex. 1 (Steelmon Depo) at 63:19-64:8, 68:16-18.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 52:8-11, 53:10-54:6.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 53:12-19. |
| 95. After Steelmon fired, Oscar's hand came up, empty. | Levine Decl., Ex. 2 (Tamate Depo.) at 53:16-54:6. |
| 96. Oscar made no verbal threats during the incident and did not say anything to challenge the officers. | Levine Decl., Ex. 3 (Mirzoyan Depo.) at 29:24-25.<br>Def. Ex. F (Steelmon BWC) at 01:04:00-27. |
| 97. When Steelmon fired, Jose heard the shot and understood Oscar had been shot. | Def. Ex. C (Jose Depo.) at 45:9-12. |
| 98. Oscar died from his injuries. | Levine Decl., Ex. 6 (Autopsy and Toxicology Report excerpts) at 3-4. |
| 99. Steelmon did not issue any commands to the truck prior to approaching. | Levine Decl., Ex. 1 (Steelmon Depo) at 25:12-26:9, 27:7-9. |
| 100. The officers did not discuss the possibility of using, or attempt to use, the PA system equipped on their vehicles, or their lights and sirens, to try to call any potential occupants out of the vehicle from a distance and from positions of cover. | Levine Decl., Ex. 1 (Steelmon Depo) at 21:24-22:1, 28:4-16, 29:14-19.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 27:5-9, 27:20-24.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 50:3-6.<br>Levine Decl., Ex. 4 (Phan Depo.) at 40:8-41:5.<br>Noble Decl. ¶¶ 11-12, 16-17, 19.<br>Levine Decl., Ex. 7. |
| 101. Steelmon did not consider, and the officers did not discuss, requesting an airship to illuminate | Levine Decl., Ex. 1 (Steelmon Depo) at 73:15-17.<br>Levine Decl., Ex. 2 (Tamate Depo.) at |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| the interior of the vehicle at any time. | 69:11-15, 70:10-24.<br>Levine Decl., Ex. 4 (Phan Depo.) at 36:16-20.<br>Noble Decl. ¶ 12.<br>Levine Decl., Ex. 7. |
| 102. The officers did not discuss pulling their vehicles closer to the truck to use as cover. | Levine Decl., Ex. 2 (Tamate Depo.) at 70:25-71:3.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 48:23-49:4. |
| 103. Prior to approaching, the officers did not discuss any tactical plan other than that Steelmon would lead in a "stick" formation and approach the passenger side. | Levine Decl., Ex. 1 (Steelmon Depo) at 29:20-30:16.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 44:13-23, 45:9-25.<br>Levine Decl., Ex. 4 (Phan Depo.) at 17:1-13.<br>Noble Decl. ¶¶ 11, 19. |
| 104. The officers did not discuss who would communicate with any potential occupants if they spoke Spanish. | Levine Decl., Ex. 1 (Steelmon Depo) at 35:23-36:1. |
| 105. Prior to approaching, Steelmon did not communicate with Sergeant Talbot. | Levine Decl., Ex. 1 (Steelmon Depo) at 21:6-11, 31:18-20. |
| 106. Sergeant Talbot played no role in discussion or planning. | Levine Decl., Ex. 3 (Mirzoyan Depo.) at 23:25-24:4. |
| 107. There was no discussion about whether any officer would carry a less-lethal weapon. | Levine Decl., Ex. 1 (Steelmon Depo) at 35:6-22.<br>Levine Decl., Ex. 4 (Phan Depo.) at 36:4-9. |
| 108. After seeing the occupants, the officers had no tactical discussion before seeing the gun. | Levine Decl., Ex. 1 (Steelmon Depo) at 48:3-10.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 46:24-47:3, 49:5-50:1.<br>Levine Decl., Ex. 4 (Phan Depo.) at |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| | 39:23-40:3. |
| 109. When the officers saw two people were in the vehicle, Officer Phan suggested that the officers re-deploy, but was ignored. | Def. Ex. G (Talbot BWC) at 01:03:13-17.<br>Noble Decl. ¶ 12.<br>Levine Decl., Ex. 7. |
| 110. Re-deployment would have allowed the officers to take cover and request additional resources including ballistic shields and an airship. | Noble Decl. ¶ 12.<br>Levine Decl., Ex. 7. |
| 111. At no time did Steelmon request that the officers reposition to a position of cover, including after seeing the gun. | Levine Decl., Ex. 1 (Steelmon Depo) at 41:18-25, 55:2-56:2.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 66:17-22, 89:21-25.<br>Noble Decl. ¶¶ 12, 17, 19.<br>Levine Decl., Ex. 7. |
| 112. Steelmon did not consider creating additional distance or taking cover. | Levine Decl., Ex. 1 (Steelmon Depo) at 55:2-56:2, 61:10-18.<br>Noble Decl. ¶¶ 12, 17, 19.<br>Levine Decl., Ex. 7. |
| 113. The officers woke Jose and Oscar, though Plaintiffs' expert opined that a reasonable officer would know waking an unconscious, intoxicated individual may result in him not obeying commands and may escalate the situation. | Def. Ex. E (Mirzoyan BWC) at 01:02:48-01:04:27.<br>Def. Ex. F (Steelmon BWC) at 01:03:10-01:04:27.<br>Noble Decl. ¶ 13. |
| 114. No officer "cleared" Oscar's waistband before Steelmon fired because Steelmon never discussed going, or directed anyone to go, to the driver's side of the vehicle. | Levine Decl., Ex. 1 (Steelmon Depo) at 39:20-22, 76:12-15.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 46:24-47:3, 49:5-50:1.<br>Levine Decl., Ex. 4 (Phan Depo.) at 39:23-40:3. |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
| --- | --- |
| 115. Steelmon thought they should get a Spanish speaker to confirm Oscar understood what he was being told and to provide an opportunity to comply, but did not request one until immediately before he shot, and took no other action to have Spanish commands be given. | Levine Decl., Ex. 1 (Steelmon Depo) at 53:5-54:1, 58:5-14. Def. Ex. F (Steelmon BWC) at 01:04:23-27. |
| 116. Steelmon was aware it was important when conducting a stop potentially involving a gun to determine what language the stopped individuals speak and, if not English, get an officer who speaks that language to communicate with them. | Levine Decl., Ex. 1 (Steelmon Depo) at 39:4-10. |
| 117. LAPD officers are trained in tactics, use of cover, and deadly force. | Levine Decl., Ex. 2 (Tamate Depo.) at 81:8-12, 86:20-87:3. |
| 118. Officers are trained that when communicating with an individual who may have deadly force used against them, they should speak in a language the individual can understand. | Levine Decl., Ex. 3 (Mirzoyan Depo.) at 56:2-57:1. |
| 119. Officers are trained that utilizing cover is important to protect against someone with a firearm, for both that person and the officer. | Levine Decl., Ex. 1 (Steelmon Depo) at 43:20-44:2. |
| 120. Officers are trained that no arrest is so important they should expose themselves to needless danger. | Noble Decl. ¶ 15. |
| 121. Officers are trained that deadly force may only be used to defend | Levine Decl., Ex. 1 (Steelmon Depo) at 76:16-20. |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| against an immediate or imminent threat of death or serious bodily injury. | Levine Decl., Ex. 2 (Tamate Depo.) at 81:17-20.<br>Levine Decl., Ex. 3 (Mirzoyan Depo.) at 55:19-22.<br>Levine Decl., Ex. 4 (Phan Depo.) at 44:10-19.<br>Noble Decl. ¶¶ 14, 20. |
| 122. Officers are trained that, for a threat of death of death or serious bodily injury to be imminent, a suspect must have the ability, opportunity, and apparent intent to immediately cause death or serious injury. | Levine Decl., Ex. 1 (Steelmon Depo) at 76:21-25.<br>Noble Decl. ¶¶ 21, 23. |
| 123. Officers are not trained that they may shoot someone based only on the fact that they have a gun in their hand or waistband. | Levine Decl., Ex. 3 (Mirzoyan Depo.) at 61:1-4.<br>Levine Decl., Ex. 2 (Tamate Depo.) at 85:23-86:4, 86:13-17.<br>Noble Decl. ¶ 22. |
| 124. Steelmon admitted that it would not have been appropriate to shoot Oscar if Oscar did not touch the gun. | Levine Decl., Ex. 1 (Steelmon Depo) at 73:22-24. |
| 125. Steelmon testified that, to have used the gun, Oscar would have had to draw it from his waistband, turn around toward Steelmon, and aim it at Steelmon while Steelmon had cover behind the "B" pillar of the vehicle. | Levine Decl., Ex. 1 (Steelmon Depo) at 55:24-56:2. |
| 126. Plaintiffs' expert opined that Steelmon's use of deadly force was inappropriate and inconsistent with generally accepted police practices. | Noble Decl. ¶¶ 25-29.<br>*See also* Levine Decl., Ex. 7. |

| PLAINTIFFS' UNDISPUTED MATERIAL FACT | SUPPORTING EVIDENCE |
|---|---|
| 127. Plaintiffs' expert opined that there was no exigency or need for haste and that, if the officers had slowed the situation, they could have secured a Spanish speaker to communicate with Oscar from a position of cover. | Noble Decl. ¶¶ 11, 18. *See also* Levine Decl., Ex. 7. |
| 128. Plaintiffs' expert opined that while the officers should have re-deployed after seeing the two men in the vehicle, the necessity to do so was heightened once Steelmon saw the gun in Oscar's waistband. | Noble Decl. ¶ 12. *See also* Levine Decl., Ex. 7. |
| 129. Plaintiffs' expert also opined that the officers' failure to engage in reasonable planning, including by designating a less-lethal officer, by failing to move to cover once Steelmon saw the gun, and by accounting for Oscar's lack of understanding of English created the circumstances that led Steelmon to use deadly force. | Noble Decl. ¶¶ 11-13, 15-19. *See also* Levine Decl., Ex. 7. |

DATED: March 13, 2026

**LAW OFFICES OF DALE K. GALIPO**

By: */s/ Benjamin S. Levine*
Dale K. Galipo
Benjamin S. Levine
Attorneys for Plaintiffs