James R. Touchstone, SBN 184584
jrt@jones-mayer.com
Denise Lynch Rocawich, SBN 232792
dlr@jones-mayer.com
JONES MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone:  (714) 446-1400
Facsimile:   (714) 446-1448

Attorneys for SEAN STEELMON

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

NELSON VASQUEZ, individually and as successor-in-interest to Decedent, Oscar Vasquez Lopez; DAYLIN VASQUEZ individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; LUSSY VASQUEZ, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; OSCAR VASQUEZ, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; K.V., by and through her Guardian ad litem, Daylin Vasquez, individually and as successor- in-interest to Decedent Oscar Vasquez Lopez; A.V., by and through his Guardian ad litem, Daylin Vasquez, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; and JOSE VASQUEZ LOPEZ, individually,

     Plaintiffs,

  vs.

CITY OF LOS ANGELES, SEAN STEELMON; and DOES 2 through 10, inclusive,

     Defendants.

Case No:  8:24−cv−02421-FLA (JDE)
Judge: Hon. Fernando L. Aenlle-Rocha
Court Room:  6B

**DEFENDANT SEAN STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT OF ISSUES**

  Date:    April 3, 2026
  Time:   1:30 p.m.
  Crtm:    6B

- 1 -

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... 2

REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
AND/OR SUMMARY JUDGMENT OF ISSUES ....................................................... 8

I.      INTRODUCTION ................................................................................ 8

II.     RELEVANT LEGAL AUTHORITY ................................................... 8

III.    DECEDENT'S ALLEGED INABILITY TO UNDERSTAND
        ENGLISH IS NOT MATERIAL ........................................................... 9

IV.     DECEDENT'S ALLEGED INTOXICATION, IF MATERIAL,
        SUPPORTS THE CONCLUSION THAT DECEDENT POSED
        AN IMMEDIATE THREAT OF DEATH OR SERIOUS INJURY
        AT THE TIME THE SHOTS WERE FIRED ....................................... 12

V.      DECEDENT UNQUESTIONABLY POSED AN IMMEDIATE
        THREAT OF DEATH OR SERIOUS INJURY TO A REASONABLE
        OFFICER ............................................................................................. 13

VI.     PLAINTIFFS HAVE NOT ESTABLISHED A TRIABLE ISSUE
        WITH REGARD TO UNLAWFUL DETENTION/FALSE ARREST ... 17

VII.    PLAINTIFFS HAVE NOT ESTABLISHED A TRIABLE ISSUE
        WITH REGARD TO INTERFERENCE WITH FAMILIAL
        RELATIONSHIP .................................................................................. 20

VIII.   PLAINTIFFS HAVE NOT ESTABLISHED A TRIABLE ISSUE
        WITH REGARD TO QUALIFIED IMMUNITY ................................ 21

IX.     PLAINTIFFS HAVE NOT ESTABLISHED A TRIABLE ISSUE
        WITH REGARD TO THEIR STATE LAW CLAIMS ....................... 23

X.      CONCLUSION .................................................................................... 25

CERTIFICATE OF COMPLIANCE ......................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

In re Agric. Research & Tech. Group, Inc.,
    916 F.2d 528 (9th Cir. 1990) ................................................................. 8

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242 (1986) .................................................................... 8, 9

Angle v. Miller,
    673 F.3d 1122 (9th Cir. 2012) .......................................................... 9

Baldridge v. City of Santa Rosa,
    No. C 97-3047 SI, 1999 U.S. Dist. LEXIS 1414, 1999 WL 66141 (N.D.
    Cal. Feb. 9, 1999) ...................................................................... 16

Blanford v. Sacramento County,
    406 F.3d 1110 (9th Cir. 2005) ......................................................... 11

Brendlin v. California,
    551 U.S. 249 (2007) ................................................................... 14

C.M. v. Cnty. of Los Angeles,
    2018 U.S. Dist. LEXIS 237146 .......................................................... 20

Cruz v. City of Anaheim,
    765 F.3d 1076 (9th Cir. 2014) ....................................................... 15, 22

Davis v. Township of Hillside,
    190 F.3d 167 (3d Cir. 1999) ........................................................... 21

Dubner v. City and County of San Francisco,
    266 F.3d 959 (9th Cir. 2001) .......................................................... 19

Ford v. Childers,
    855 F.2d 1271 (7th Cir. 1988) ......................................................... 11

French v. Pierce Cnty.,
    2024 U.S. Dist. LEXIS 94638 (W.D. WA 2024) ........................................... 12

George v. Morris,
    736 F.3d 829 (9th Cir. 2013) ...................................................... 16, 22

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

Gonzalez v. City of Anaheim,
  747 F.3d 789 (9th Cir. 2014)..................................................................................... 15

Graham v. Connor,
  490 U.S. 386, 109 S. Ct. 1865 (1989)............................................................. 10, 12, 14

Haynie v. County of Los Angeles
  (9th Cir. 2003) 339 F.3d 1071 ................................................................................. 19

Kisela v. Hughes,
  584 U.S. 100, 138 S. Ct. 1148 (2018)......................................................................... 11

A.K.H. ex rel. Landeros v. City of Tustin,
  837 F.3d 1005 (9th Cir. 2016) .................................................................................. 14

Lopez v. Aitken,
  2011 U.S. Dist. LEXIS 16396 (S.D. Cal. Feb. 18, 2011) ............................................ 13

Estate of Lopez v. Gelhaus,
  871 F.3d 998 (9th Cir. 2017) ................................................................................. 9, 25

Marvin v. City of Taylor,
  509 F.3d 234 (6th Cir. 2007) ............................................................................... 12, 13

Mattos v. Agarano,
  661, F.3d 433, 453 (9th Cir. 2011) ........................................................................... 14

Mayfield v. City of Mesa,
  131 F.4th 1100 (9th Cir. 2025 )................................................................................. 10

McLenagan v. Karnes,
  27 F.3d 1002 (4th Cir. 1994), cert. denied, 513 U.S. 1018, 115 S. Ct.
  581, 130 L. Ed. 2d 496 (1994) ................................................................................. 20

Monroe v. City of Phoenix,
  248 F.3d 851 (9th Cir. 2001) ................................................................................... 23

Plakas v. Drinski,
  19 F.3d 1143 (7th Cir. 1994) ................................................................................... 14

Porter v. Osborn,
  546 F.3d 1131 (9th Cir.2008) .............................................................................. 20, 21

Reese v. Anderson,
  926 F.2d 494 (5th Cir. 1991) ................................................................................... 17

- 4 -

Rice v. Morehouse,
    989 F.3d 1112 (9th Cir. 2021) .............................................................................. 13

Rosen v. Montgomery County,
    121 F.3d 154 (4th Cir. 1997) ............................................................................... 10

Ross v. Cnty. of San Diego,
    2025 U.S. Dist. LEXIS 57871 (S.D. Cal. 2025) ................................................. 12

Sabbe v. Washington Cnty. Bd. of Commissioners,
    84 F.4th 807 (9th Cir. 2023) ................................................................................ 22

Salazar-Limon v. City of Houston,
    826 F.3d 272 (5th Cir. 2016) ......................................................................... 12, 22

Sanchez v. Jiles,
    2012 U.S. Dist. LEXIS 200372 (C.D. Cal. June 14, 2012) ................................ 13

Scott v. Harris,
    550 U.S. 372, 127 S.Ct. 1769 (2007).......................................................... 9, 24, 25

Scott v. Henrich,
    39 F.3d 912 (9th Cir. 1994) ................................................................................. 16

Smith v. City of Hemet,
    394 F.3d 689 (9th Cir. 2005) ..................................................................... 14, 16, 23

Sok Kong Tr. for Map Kong v. City of Burnsville,
    960 F.3d 985 (8th Cir. 2020) ......................................................................... 12, 15

Terry v. Ohio,
    392 U.S. 1, 88 S. Ct. 1868 (1968)....................................................... 10, 14, 18, 19

Turner v. County of Kern,
    2014 U.S. Dist. LEXIS 18573 (E.D. Cal. Feb. 13, 2014)................................... 13

U.S. v. Bautista
    684 F.2d 1286 (9th Cir. 1982) ............................................................................. 19

U.S. v. Parr,
    843 F.2d 1228 (9th Cir. 1988) ............................................................................. 19

United States v. Alvarez,
    899 F.2d 833 (9th Cir. 1990) ............................................................................... 19

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

United States v. Botello-Rosales,
    728 F.3d 865 (9th Cir. 2013) ............................................................................... 10

United States v. Buffington,
    815 F.2d 1292 (9th Cir. 1987) ............................................................................. 19

United States v. Hensley,
    469 U.S. 221, 105 S. Ct. 675 (1985)..................................................................... 19

United States v. Martinez-Garcia
    (9th Cir. 2005) 397 F.3rd 1205 ............................................................................ 10

United States v. Sokolow,
    490 U.S. 1, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989)................................... 17, 18

United States v. Terry-Crespo,
    356 F.3d 1170 (9th Cir. 2004) ............................................................................. 18

Villarimo v. Aloha Island Air, Inc.,
    281 F. 3d 1054 (9th Cir. 2002) .............................................................................. 9

Waterman v. Batton,
    393 F.3d 471 (4th Cir. 2005)................................................................................ 20

White v. Pauly,
    580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017)................................. 21, 22

Wilkinson v. Torres,
    610 F.3d 546 (9th Cir. 2010) ............................................................................... 20

**State Cases**

Cornell v. City & Cty. of San Francisco,
    17 Cal. App. 5th 766 (2017) ................................................................................ 23

Edson v. City of Anaheim,
    63 Cal.App.4th 1269 (1998) ........................................................................... 13, 23

Grundt v. City of Los Angeles,
    2 Cal.3d 575 (1970) ............................................................................................. 23

Hayes v. Cty. of San Diego,
    57 Cal. 4th 622 (2013) ......................................................................................... 24

Munoz v. City of Union City,
    120 Cal.App.4th 1077 (2004) .............................................................................. 23

- 6 -

People v. Bowen,
    195 Cal. App. 3d 269 (1987) ...................................................................................... 19

People v. Celis,
    33 Cal. 4th 667 (2004) .............................................................................................. 19

**State Statutes**

Civil Code § 52.1 ............................................................................................................ 23

Penal Code § 241 ........................................................................................................... 19

Penal Code § 25400 ....................................................................................................... 18

Penal Code § 25850(b) ................................................................................................... 18

**Constitutional Provisions**

Fourth Amendment ....................................................................... 10, 13, 19, 22

Fourteenth Amendment ........................................................................... 20, 21

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

# REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY JUDGMENT OF ISSUES

## I.    INTRODUCTION

Plaintiffs, in opposing Officer Steelmon's Motion for Summary Judgment and/or Motion for Partial Summary Judgment of Issues, fail to make any showing that there are genuine issues for trial. In some instances, Plaintiffs allege a factual dispute exists, but either fail to cite to any admissible evidence or cite to evidence that does not create a dispute. In other instances, Plaintiffs allege a dispute exists but the alleged dispute is not material. Plaintiffs also make multiple factual allegations that are blatantly contradicted by the objective evidence. When the irrelevant facts and non sequiturs put forth by Plaintiffs are appropriately set aside, it becomes clear that, for purposes of this Motion for Summary Judgment, the material facts of this case are undisputed. Under those undisputed material facts, Officer Steelmon is entitled to judgment as a matter of law. In short, a verdict in favor of Officer Steelmon is the only conclusion that a reasonable jury could reach. Accordingly, Officer Steelmon's Motion should be granted.

## II.    RELEVANT LEGAL AUTHORITY

A fact is "material" only if proof of that fact would establish or refute one of the elements of a claim or affirmative defense at issue: thus, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude …summary judgment[;]…[f]actual disputes that are irrelevant or unnecessary will not be counted." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); In re Agric. Research & Tech. Group, Inc., 916 F.2d 528, 533-534 (9th Cir. 1990). An opposing party cannot show a "genuine" dispute of material fact by relying on the mere allegations or denials of his pleading, conclusory allegations unsupported by factual data, legal argument by itself, or

-8-
STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

speculation. See Anderson, 477 U.S. at 248 *accord* Angle v. Miller, 673 F.3d 1122, 1134 n. 6 (9th Cir. 2012). Rather, to show that there is a genuine dispute of material fact, the  opposing party must produce "sufficient [admissible] evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249-250.

Key to the matter at hand, the Court should only draw *reasonable* inferences in favor of the nonmoving party to the extent supportable by the record. Scott v. Harris, 550 U.S. 372, 380-81, 127 S.Ct. 1769, 1776 (2007). Where there is objective video evidence, facts should be construed in the light established by the objective video evidence. Id. at 380. More specifically, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Estate of Lopez v. Gelhaus, 871 F.3d 998, 1008 (9th Cir. 2017) *citing* Scott, 550 U.S. at 380-81 [addressing video evidence utterly discrediting a party's version of events]. Moreover, the non-moving party is not entitled to all merely possible inferences, only the justifiable, reasonable inferences. Anderson, supra 477 U.S. at 255; Villarimo v. Aloha Island Air, Inc., 281 F. 3d 1054, 1065 fn. 10 (9th Cir. 2002).

## III.  DECEDENT'S ALLEGED INABILIY TO UNDERSTAND ENGLISH IS NOT MATERIAL

Plaintiffs primary argument in Opposition to most of the Undisputed Facts presented by Officer Steelmon, is that neither Decedent nor Plaintiff Jose Vasquez Lopez spoke or understood Spanish. First and foremost, the objective video evidence establishes that Officers *did* attempt to issue commands in Spanish. See SUF 26, 31 and 32. Further, Plaintiffs' own evidence establishes that the officers also attempted to have a Spanish-speaking officer respond to the scene. See

-9-

Plaintiffs' Ex. 1 at p. 53:5-10, Ex. 2 at p. 59:21-25 and Ex. 7 pp. 2890, 2902 and 2933. In fact, the officers on scene went above what is required by law.

While there are some instances in which a person is entitled to a translator when interacting with police [see e.g. United States v. Botello-Rosales, 728 F.3d 865, 867-868 (9th Cir. 2013) [suspect entitled to accurate translation of Miranda rights], there is no general guarantee of an in-person interpreter for non-custodial encounters. See Rosen v. Montgomery County, 121 F.3d 154, 158 (4th Cir. 1997) ["The police do not have to get an interpreter before they can stop and shackle a fleeing bank robber, and they do not have to do so to stop a suspected drunk driver, conduct a field sobriety test, and make an arrest."] *accord* Mayfield v. City of Mesa, 131 F.4th 1100, 1112 (9th Cir. 2025 ); see also United States v. Martinez-Garcia (9th Cir. 2005) 397 F.3rd 1205 [The Fourth Amendment is *not* violated when the officers commence the search before the occupant can be read, in his own language, the contents of the warrant.]

Moreover, only the facts available to the officer "*at the moment* of the seizure" are relevant during a Terry stop. Terry v. Ohio, 392 U.S. 1, 22, 88 S. Ct. 1868 (1968) [emphasis added]. In that same vein, "the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865 (1989). Here, other than simply appearing to be Hispanic, there is no evidence demonstrating Officer Steelmon knew or had reason to know that either occupant of the truck definitively did not speak any English. Neither Decedent nor Plaintiff Jose Vasquez Lopez responded to the officers in any way. Neither spoke Spanish to the officers. Neither responded to commands in Spanish. ***The objective reasonableness standard, including addressing a suspect's failure to comply with commands, is not impacted by a later revelation that the suspect failure to comply with commands was because the suspect did not***

-10-

*understand English*. See United States v. Pacheco, 841 F.3d 384, 394 (6th Cir. 2016).

In that same vein, that a suspect didn't understand or hear an officer's commands or warnings does not present a question of material fact as to whether those commands and/or warnings were actually given. See Id.; Ford v. Childers, 855 F.2d 1271, 1276 (7th Cir. 1988); Lowry v. City of San Diego, 858 F.3d 1248, 1255-1256 (9th Cir. 2017) [suspect didn't hear warnings because they were asleep]; Blanford v. Sacramento County, 406 F.3d 1110, 1116 (9th Cir. 2005) [suspect didn't hear commands because he had headphones in]; Kisela v. Hughes, 584 U.S. 100, 110, 138 S. Ct. 1148 (2018) ["Hughes may not have heard or understood the officers' commands and may not have been aware of the officers' presence at all.]; Ybarra v. City of Chicago, 946 F.3d 975, 980 (7th Cir. 2020) [no issue of material fact where suspects did not hear commands.]

Here, the objective video evidence establishes that numerous commands were given, including commands in Spanish. SUF 26, 31, 32, 34-37, 40, 42, 45. The objective video evidence also establishes that Officer Steelmon explicitly warned Decedent that he would be shot if he grabbed for the firearm. SUF 40. The objective reasonableness of his use of force, including consideration of Decedent's failure to comply with commands in that force analysis, is not impacted by the 20/20 information that Decedent did not speak or understand English. As was the case in Pacheco, "[i]n the moment, [Officer Steelmon] did not know that [Decedent's] failure to comply with his commands was because [Decedent] did not understand English; instead, all he knew was that he had a suspect who was ignoring his commands and avoiding eye contact…". Pacheco, supra 841 F.3d at 394.

-11-

**IV.   DECEDENT'S ALLEGED INTOXICATION, IF MATERIAL, SUPPORTS THE CONCLUSION THAT DECEDENT POSED AN IMMEDIATE THREAT OF DEATH OR SERIOUS INJURY AT THE TIME THE SHOTS WERE FIRED**

In a similar vein as above, Plaintiffs base their Opposition, in large part, on the argument that Officer Steelmon's use of force was unreasonable because Decedent was intoxicated. However, the presence of "***intoxication does not reduce the immediate and significant threat a suspect poses***." Sok Kong Tr. for Map Kong v. City of Burnsville, 960 F.3d 985, 993 (8th Cir. 2020). More specifically, "[i]ntoxicated suspects do not enjoy a more lax standard when analyzing excessive force claims." French v. Pierce Cnty., 2024 U.S. Dist. LEXIS 94638, *12 (W.D. WA 2024). As such, in French, summary judgment was granted and the use of deadly force found objectively reasonable where defendant officers "repeatedly warned a ***very intoxicated*** [suspect] to stop and to drop the knife" prior to resorting to deadly force. Id. [emphasis added]; see also Salazar-Limon v. City of Houston, 826 F.3d 272, 275 (5th Cir. 2016) [Officer's actions were objectively reasonable considering suspect's "resistance, intoxication, his disregard for [the officer]'s orders" and his actions "leading up to the shooting (including suddenly ***reaching towards his waistband***).] [emphasis in original].

While Decedent's intoxication here should be considered as part of the totality of circumstances, the fact that a suspect who poses an immediate threat may be intoxicated does not remove the case from the Graham analysis. Id.; see also Ross v. Cnty. of San Diego, 2025 U.S. Dist. LEXIS 57871, *20 (S.D. Cal. 2025). To the contrary, an intoxicated suspect can contribute to the unpredictability of the situation and increase the danger for all involved in a law enforcement encounter. See Marvin v. City of Taylor, 509 F.3d 234, 246 (6th Cir. 2007). "Drunk persons are generally unpredictable," such that extra police precautions

-12-

may be justified in confronting an intoxicated suspect. <u>Marvin v. City of Taylor</u>, 509 F.3d 234, 246 (6th Cir. 2007).

Indeed, Courts throughout the Ninth Circuit have found evidence of a plaintiff's intoxication *corroborates* an officer's evidence of refusal to obey commands. <u>See</u> <u>Turner v. County of Kern</u>, 2014 U.S. Dist. LEXIS 18573 at *2 (E.D. Cal. Feb. 13, 2014) [intoxication of plaintiff was relevant "to explain [the decedent's] conduct and corroborate the officers' versions of events"]; <u>Sanchez v. Jiles</u>, 2012 U.S. Dist. LEXIS 200372 at *23 (C.D. Cal. June 14, 2012) [intoxication of plaintiff could "substantiate officers' observations," including "refusal to obey officers' commands"]; <u>Lopez v. Aitken</u>, 2011 U.S. Dist. LEXIS 16396 *2 (S.D. Cal. Feb. 18, 2011) [intoxication of plaintiff substantiated officers' assertions that he failed to obey commands]. The circumstances facing Officer Steelmon here included a non-compliant, possibly heavily intoxicated, suspect who reached for his handgun in his waistband. In other words, Decedent's intoxication *heightened* the threat to Officer Steelmon – it didn't diminish it – as a sober person would probably be less likely to reach for a handgun when an officer has a shotgun pointed at him.

## V.   <u>DECEDENT UNQUESTIONABLY POSED AN IMMEDIATE THREAT OF DEATH OR SERIOUS INJURY TO A REASONABLE OFFICER</u>

"In evaluating a Fourth Amendment claim of excessive force, we ask whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." <u>Rice v. Morehouse</u>, 989 F.3d 1112, 1121 (9th Cir. 2021). Controlling authority prohibits courts from second-guessing an officer's split-second judgments at the scene – in recognition of the unique burdens and safety risks our society places on police officers. <u>Edson v. City of</u>

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

Anaheim, 63 Cal.App.4th 1269, 1273 (1998) ["Unlike private citizens, police officers act under color of law to protect the public interest. They are charged with acting affirmatively and using force as part of their duties…"). The Supreme Court has stated that "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties …[because] American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives." Terry, supra 392 U.S. at 23-24.

Accordingly, during an investigative detention, " '[t]he risk of harm to both the police and the [detainee] is minimized if the officers routinely exercise unquestioned command of the situation.'" Brendlin v. California, 551 U.S. 249, 258 (2007). This rule reflects our societal expectation that, generally, "[b]y asking police to serve and protect us, we citizens agree to comply with their instructions and cooperate with their investigations." Mattos v. Agarano, 661, F.3d 433, 453 (9th Cir. 2011). Thus, while courts should "consider the whole of the event as it appear[ed] to the officer involved," courts must also "recognize that the decision to shoot can only be made after he briefest reflection, so brief that 'reflection' is the wrong word." See Plakas v. Drinski, 19 F.3d 1143, 1149 (7th Cir. 1994).

There is no question that Officer Steelmon used deadly force against Decedent. This most severe of intrusions must be justified by the governmental interests at stake. See A.K.H. ex rel. Landeros v. City of Tustin, 837 F.3d 1005, 1011 (9th Cir. 2016). In evaluating those interests, the "***most important single element of the . . . factors***" identified in Graham ***is whether the suspect poses an immediate threat to the safety of the police officers or others***. Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005) *quoting* Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994) [emphasis added]. "The key issue . . . is whether a reasonable

-14-

jury would necessarily find that [the officer] perceived an immediate threat of death or serious physical injury at the time he shot [the decedent][.]" Gonzalez v. City of Anaheim, 747 F.3d 789, 794 (9th Cir. 2014). It is "unquestionably reasonable for police to shoot a suspect…*if he reaches for a gun in his waistband, or even if he reaches there for some other reason*." See Cruz v. City of Anaheim, 765 F.3d 1076, 1078 (9th Cir. 2014).

In Opposition to Officer Steelmon's Motion, Plaintiffs are hyper focused on the subjective reasons behind Decedent's actions rather than on the objective evidence and the application of the law. Plaintiffs did not identify any evidence, legal authority, or even substantial argument establishing that Decedent did not pose an immediate threat to Officer Steelmon at the time that Officer Steelmon fired.

The objective video evidence conclusively establishes that Officer Steelmon and Officer Tamate issued a number of commands. SUF 25, 26, 31, 34, 36, 40, 41, 42, 45, 47. The objective video evidence conclusively establishes that those commands were not followed. Id. Evidence of Decedent's reasons for not complying – either due to a language barrier or due to intoxication – do not present a question of material fact as to whether those commands were actually given and were not followed, and do not present a question of material fact as to whether such failure posed a threat. See Pacheco, 841 F.3d at 394; Sok Kong Tr. for Map Kong, supra 960 F.3d at 993 (8th Cir. 2020). The objective video evidence establishes that Decedent had a handgun in his waistband. SUF 2, 34, 37, 40, 43, 51-54. The objective video evidence establishes that Officer Steelmon issued a specific warning that Decedent would be shot if he reached for the gun. SUF 40, 41. Again, any language barrier or intoxication does not present a question of material fact as to whether that warning was actually given. See Pacheco, 841 F.3d at 394; Sok Kong Tr. for Map Kong, supra 960 F.3d at 993 (8th Cir. 2020).

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

Finally, and most importantly, the objective video evidence conclusively establishes that Decedent reached for, or towards, the handgun in his waistband. 47. Steelmon's Ex. "F" (Steelmon BWC) at 1:04:25 undeniably shows this movement, and there is no other reasonable interpretation of that video evidence. Corroborating the video evidence is the unrebuted testimony of Steelmon. See Decl. Steelmon at ¶ 9. Also corroborating the video evidence is the testimony of Officer Tamate submitted by Plaintiffs. See Plaintiffs' Ex. "2" at p. 52:6-7, 17-19 ["His hand was so close, it appeared as if he was touching the gun."; "I mean, it's just like, I'm going to say he was touching the gun."] Finally, of the multiple persons and/or entities who reviewed Officer Steelmon's body worn camera footage, not a single one failed to conclude that the body worn camera footage shows that Decedent reached for the handgun. See Plaintiffs' Ex. "7" at CITY 2903, 2931, 2946 and Defendants' Ex. "J" at p. 6:17-19, p. 9:21-22 and p. 10:5-8. In short, no reasonable jury could conclude that Decedent *didn't* reach for the handgun.

"[W]here a suspect threatens an officer with a weapon such as a gun or a knife, the officer is justified in using deadly force." Smith, supra 394 F.3d at 704. Likewise, deadly force is reasonable when an armed suspect makes a furtive movement or harrowing gesture, such as Decedent did here. See George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013). And, where the use of deadly force is reasonable, the Court doesn't inquire whether less intrusive alternatives were available. Scott v. Henrich, 39 F.3d 912, 915 (9th Cir. 1994).

In fact, Officer Steelmon's actions were reasonable even if Decedent *wasn't* armed (which he clearly was). Use of deadly force is reasonable if a reasonable officer would conclude that a suspect is ***reaching for a gun*** and about to shoot e***ven if it turns out he wasn't actually armed***. See Baldridge v. City of Santa Rosa, No. C 97-3047 SI, 1999 U.S. Dist. LEXIS 1414, 1999 WL 66141, at *7 (N.D. Cal.

-16-

Feb. 9, 1999) [Holding that it was irrelevant that the decedent was unarmed as his actions alone "could cause a reasonable officer to fear imminent and serious physical harm" and *citing* <u>McLenagan v. Karnes</u>, 27 F.3d 1002, 1008 (4th Cir. 1994) [no requirement that police officer actually observe an object in suspect's hand before firing on him, where reasonable officer possessing the same particularized information could have believed that suspect was armed, and where officer could not confirm that suspect was unarmed], cert. denied, 513 U.S. 1018, 115 S. Ct. 581, 130 L. Ed. 2d 496 (1994) and <u>Reese v. Anderson</u>, 926 F.2d 494, 501 (5th Cir. 1991) [police officer's use of deadly force justified where officer reasonably believed suspect had retrieved a gun and posed a threat of imminent harm to the officer and others nearby].

Thus, it is unquestionable that at the time deadly force was used, Decedent posed a serious threat to Officer Steelmon with the potential to cause serious bodily injury or death if he fired his weapon at the Officer. Therefore, no genuine issue of material fact exists as to Plaintiffs' excessive force Claim against Officer Steelmon.

## VI. <u>PLAINTIFFS HAVE NOT ESTABLISHED A TRIABLE ISSUE WITH REGARD TO UNLAWFUL DETENTION/FALSE ARREST</u>

Plaintiffs have likewise failed to establish a triable issue with regard to their Claims for Unlawful Detention or Arrest. If Officer Steelmon had a reasonable articulable suspicion that criminal activity was afoot, he could detain Decedent to conduct an investigatory, "pat down" frisk, consistent with the Fourth Amendment's prohibition against "unreasonable searches and seizures." <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989) *citing* <u>Terry v. Ohio</u>, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Where a 911 call exhibits sufficient "indicia of reliability," it provides Officers with reasonable

-17-

suspicion justifying a Terry stop. Id.; see also United States v. Terry-Crespo, 356 F.3d 1170, 1173-1177 (9th Cir. 2004).

Here, Plaintiffs do not contest that a 911 call was made and did not object to the admission of the 911 call itself. Instead, Plaintiffs attempt to challenge the "inidicia of reliability" of the 911 call. See SUF 12-14. However, the materials cited by Plaintiffs do not establish a genuine dispute as to this fact. Fed. R. Proc. 56(c)(B). The call described "a dark pickup truck" "parked in front of CVS". SUF 12-14. Officers Steelmon and Tamate observed a dark pick up truck parked in front of CVS. Id. Decedent and Plaintiff Vasquez were, in fact, inside a dark pickup truck parked in front of CVS. Id. Moreover, though Plaintiffs attempt to establish that there were a number of vehicles in the lot matching the description in the 911 call, the objective video evidence demonstrates otherwise – a single dark pickup truck parked in front of CVS. SUF 14.

Also, as noted in Foster, a reasonable officer here could have concluded that the 911 call provided information on potential illegal activity because "California law "generally prohibits carrying concealed firearms in public, whether loaded or unloaded." Foster, supra at 1216 citing Peruta v. Cty. of San Diego, 824 F.3d 919, 925 (9th Cir. 2016) [en banc] and Cal. Penal Code § 25400 [crime of carrying a concealed firearm], § 25850 [crime of carrying a loaded firearm in public]. More importantly, Penal Code section 25850(b) specifically permits officers to examine a firearm "in order to determine whether or not a firearm is loaded for the purpose of enforcing [Section 25850]." Thus, a 911 call related to a firearm in public "raises a reasonable suspicion of potential criminal activity, even if the tip does not state that the person is carrying the firearm illegally or is about to commit a crime." Foster, supra at 1215.

For all these reasons, it is without question that Officer Steelmon had a reasonable articulable suspicion that Decedent was involved in criminal activity

-18-

such as they could detain him to conduct an investigatory pat down and/or inspection of his weapon. As to false arrest, Plaintiffs have provided no evidence establishing that Decedent was arrested prior to the shooting. The Supreme Court and the Ninth Circuit court have permitted limited intrusions on a suspect's liberty during a Terry stop to protect the officer's safety and have held that the use of force does not convert the stop into an arrest if it is justified by a concern for the officer's personal safety. See United States v. Hensley, 469 U.S. 221, 235-36, 105 S. Ct. 675 (1985); Terry v. Ohio, 392 U.S. 1, 24, 88 S. Ct. 1868, 1881 (1968). Specifically, courts have permitted making individuals lie on the pavement and holding them at gunpoint [United States v. Alvarez, 899 F.2d 833, 838 (9th Cir. 1990); United States v. Buffington, 815 F.2d 1292, 1300 (9th Cir. 1987); People v. Celis, 33 Cal. 4th 667, 675 (2004)], placing individuals in a police car [U.S. v. Parr, 843 F.2d 1228, 1231 (9th Cir. 1988)] and handcuffing detained persons [People v. Bowen, 195 Cal. App. 3d 269, 272-274 (1987); U.S. v. Bautista 684 F.2d 1286, 1289-1290 (9th Cir. 1982); Haynie v. County of Los Angeles (9th Cir. 2003) 339 F.3d 1071, 1077] all without converting a detention into an arrest.

Finally, Plaintiffs have provided no evidence establishing that Decedent was arrested post-shooting. The objective video evidence establishes that Decedent was already deceased when handcuffed. Further, had Decedent survived, a claim for false arrest is only cognizable under Section 1983 as a violation of the Fourth Amendment if the arrest was without probable cause or other justification. Dubner v. City and County of San Francisco, 266 F.3d 959, 964-65 (9th Cir. 2001). Here, the evidence shows that Officer Steelmon clearly had probable cause to arrest Decedent for Penal Code section 241 [assault on an officer] or section 245 [assault with a deadly weapon]. For all these reasons, the Second Claim fails as a matter of law.

-19-

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

## VII. PLAINTIFFS HAVE NOT ESTABLISHED A TRIABLE ISSUE WITH REGARD TO INTERFERENCE WITH FAMILIAL RELATIONSHIP

Plaintiffs have not established that "actual deliberation" was practical such that Officer Steelmon's decision to shoot should be judged under the lower "deliberate indifference" Fourteenth Amendment standard. See Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir.2008) and Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010). When Decedent reached for the handgun, which as discussed above is unquestionable, Officer Steelmon was forced to make a split-second decision whether to fire upon Decedent. "[I]f the officers paused for even an instant, they risked losing their last chance to defend themselves." Waterman v. Batton, 393 F.3d 471, 478 (4th Cir. 2005). The Court should not "second-guess the split second judgment of a trained police officer merely because that judgment turns out to be mistaken, particularly where inaction could have resulted in death or serious injury to the officer and others." McLenagan v. Karnes, 27 F.3d 1002, 1008 (4th Cir. 1994); see also C.M. v. Cnty. of Los Angeles, 2018 U.S. Dist. LEXIS 237146, *22.

The objective video evidence establishes that, from the time that Officer Steelmon saw that Decedent had a firearm in his waistband and yelled "Gun, gun, gun" to the time the single shot was fired, was 42 seconds. SUF 34-48 During that 42 seconds, Officer Steelmon gave Decedent multiple commands and faced split-second decisions in a situation that escalated extremely rapidly. SUF 34-48 A mere 27 seconds elapsed between the time Officer Steelmon warned Decedent that he would be shot if he touched the gun to the time Officer Steelmon actually fired. SUF 40-48 Officer Steelmon did "not have the luxury of delay" and instead had "precious little time for deliberation". Indeed, Here, Officer Steelmon made the decision to fire in the split second that Decedent gripped the gun in his waistband.

-20-

SUF 47, 50. Moreover, as discussed above, Officer Steelmon's conduct was related to the legitimate law enforcement objectives of investigating a man armed with a gun in a public parking lot. SUF 1-4. As such, Plaintiffs cannot maintain a claim under the Fourteenth Amendment and summary judgment is appropriate. See Porter, supra 546 F.3d at 1140 and Davis v. Township of Hillside, 190 F.3d 167, 172 (3d Cir. 1999).

## VIII.  **PLAINTIFFS HAVE NOT ESTABLISHED A TRIABLE ISSUE WITH REGARD TO QUALIFIED IMMUNITY**

Decedent suffered no constitutional violation of any sort. However, assuming arguendo this Court were to find that a constitutional violation *had* occurred, Officer Steelmon would nonetheless be entitled to summary judgment on the grounds of qualified immunity because the rights alleged by Plaintiffs were anything but clearly established at the time of the incident. As discussed in detail in Steelmon's Motion, qualified immunity must be granted unless an officer's conduct was ***prohibited*** by clearly established law. See White v. Pauly, 580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017). Here, not only is there a lack of law *prohibiting* Officer Steelmon's conduct, there are a significant number of cases *supporting* it.

The facts of this case, as discussed in detail above, are clear in objective video evidence. The Officers announced their presence as police officer as soon as they approached the vehicle. Officers Steelmon gave a number of commands to Decedent including telling him "Don't move, don't reach for the gun,"  "Do not reach for the gun." And explicitly warning, "I'm going to shoot you if you reach for that gun. Don't do it." After a couple seconds elapsed, Officer Steelmon continued giving commands to Decedent, telling him "Hands in the air. Put your hands on top of your head now." Eventually yelling, "Don't do it!" immediately

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

prior to firing when Decedent ignored the commands and warning and grabbed for the firearm. There is no Ninth Circuit, or Supreme Court case, wherein the court holds that an officer who sees a suspect make a movement toward what the officer *knows is a gun*, *after numerous commands and an explicit warning*, must wait before resorting to lethal force or refrain from resorting to lethal force.

Plaintiffs' Opposition as to the issue of qualified immunity makes exactly the mistake the Supreme Court warned against in White v. Pauly, 580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017). That is, Plaintiffs define "clearly established law" at a high level, relying on excessive force principles at only a general level. Plaintiffs have completely failed to identify a case where an officer acting under similar circumstances as Officer Steelmon was held to have violated the Fourth Amendment. No such case exists. To the contrary, Ninth Circuit case law "is clear that when a suspect reaches for a gun . . . responding with deadly force does not violate the Constitution." Sabbe v. Washington Cnty. Bd. of Commissioners, 84 F.4th 807, 828 (9th Cir. 2023).

In that same vein, the Ninth Circuit has held that when a suspect is "reasonably suspected of being armed," even a furtive movement can "create an immediate threat" sufficient to justify the use of deadly force. George, 736 F.3d at 838. Most relevantly, the Ninth Circuit has told officers that it is "unquestionably reasonable" *to shoot at a suspect that "reaches for a gun in his waistband,* or even if he reaches there for some other reason." Cruz v. City of Anaheim, 765 F.3d 1076, 1078 (9th Cir. 2014) [emphasis added]; see also Salazar-Limon v. City of Houston, 826 F.3d 272, 275 (5th Cir. 2016) [Officer's actions were objectively reasonable considering suspect's "resistance, intoxication, his disregard for [the officer]'s orders" and his actions "leading up to the shooting (including suddenly *reaching towards his waistband*).] [emphasis in original]. In sum, Officers are not required to delay using deadly force until the moment that a suspect poses the

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

maximum threat. "Surely [an officer is] not required to wait and be seriously injured or killed before exercising his judgment and bringing the situation under control." Monroe v. City of Phoenix, 248 F.3d 851, 862 (9th Cir. 2001). Accordingly, Officer Steelmon is entitled to qualified immunity as to each of Plaintiffs' federal claims.

**IX.   PLAINTIFFS HAVE NOT ESTABLISHED A TRIABLE ISSUE WITH REGARD TO THEIR STATE LAW CLAIMS**

As to Plaintiffs' Battery Claim and Civil Code section 52.1 Claim, they fails because Officer Steelmon's conduct here was reasonable and not unconstitutional as discussed at length above. See, e.g., Munoz v. City of Union City, 120 Cal.App.4th 1077, 1102 (2004); Edson v. City of Anaheim, 63 Cal.App.4th 1269, 1272 (1998); Grundt v. City of Los Angeles, 2 Cal.3d 575, 587 (1970); Cornell v. City & Cty. of San Francisco, 17 Cal. App. 5th 766, 800 (2017).

As to their Negligence Claim, summary judgment is appropriate for all the reasons discussed in Officer Steelmon's Motion, most notably that no reasonable jury could find that Officer Steelmon's conduct was unreasonable or negligent, including in their pre-shooting tactics. The undisputed evidence demonstrates that the officers "were methodical and engaged in reasonable exercises of judgment in their pre-shooting conduct." See Smith, 2017 U.S. Dist. LEXIS 65335, at *50-53.

Plaintiffs' attempt to create a triable issue as to the Officers' pre-shooting conduct fails as the materials cited simply do not establish a genuine dispute. See Response to SUF at 7-8. First and foremost, Plaintiffs did not object to Steelmon's Declaration discussing pre-shooting tactics. Further, the deposition testimony cited by Plaintiffs clearly states that the Officers discussed "what the comments of the call were" (Plaintiffs' Ex. "1" at p. 23:12-13) and "contact and cover" (Id. at lns. 13-14) including a discussion of what weapon would be deployed (Id. at lns. 15-

-23-

20). That testimony was in response to counsel asking Steelmon "Now, you indicated that you discussed tactics to some extent, with your partner, on your way to the call?" (Plaintiffs' Ex. "1" at p. 23:7-9) indicating additional uncited testimony about the tactics discussion between the Officers. Further, Steelmon also testified "We then entered the parking lot, *continually discussing tactics*, what we – where the truck is, etc." Id. at p. 19:1-5. Further, both the objective video evidence and the testimony cited by Plaintiffs establishes the Officers acted methodically and reasonably in approaching the vehicle and in attempting to obtain compliance from Decedent and Plaintiff Vasquez Lopez. See Response to SUF at 12-47. The law of negligence does not require officers to choose the "'most reasonable' action or the conduct that is the least likely to cause harm," so long as their conduct falls "within the range of conduct that is reasonable under the circumstances." Hayes v. Cty. of San Diego, 57 Cal. 4th 622, 632 (2013) [citation omitted]. Officer Steelmon's conduct unquestionably falls into that range. Thus, the negligence claim must fail.

Finally, as to Plaintiffs' Negligent Infliction of Emotional Distress claim, Plaintiffs' refute that Plaintiff Jose Vasquez Lopez was not aware Decedent was being injured at the time the shot was fired. See Response to SUF at 32, 39. Specifically, that "Jose testified he recalled being dragged out of the truck and hearing Officer Steelmon fire, and video evidence from just before he was pulled out of the truck show his eyes open as he looked toward the officers." Id. at 39. However, once again, the objective evidence of the video recordings speaks for itself. See Scott, 550 U.S. 372. Steelmon's Ex. "D" (Phan BWC) at 1:03:59-1:04:32 very clearly establishes that Plaintiff Vasquez Lopez was completely limp as he was pulled out of the truck, pulled further from the truck and handcuffed, that his eyes were closed throughout., that he made no movement in between the time he was handcuffed until the shot was fired, and that he remained on his stomach

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION

with his eyes closed during the entire encounter. Plaintiff Vasquez Lopez's self-serving testimony is belied by the video of the incident and demonstrably false. See Scott, 550 U.S. 372. Again, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Gelhaus, 871 F.3d at 1008 *citing* Scott, 550 U.S. at 380-81 [addressing video evidence utterly discrediting a party's version of events]. As such, Plaintiffs' Negligent Infliction Claim fails.

## X.   **CONCLUSION**

Based on the foregoing, the Court should grant Defendant, Officer Sean Steelmon's, Motion for Summary Judgment and/or Partial Summary Judgment and enter judgment in its favor and against Plaintiffs.

Dated:   March 20, 2026

Respectfully submitted,

JONES MAYER

By: /s/ *Denise Lynch Rocawich*
JAMES R. TOUCHSTONE
DENISE LYNCH ROCAWICH
Attorneys for Sean Steelmon

-25-

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Sean Steelmon, certifies that this brief contains 5624 words, which complies with the word limit of L.R. 11-6.1.

Dated:     March 20, 2026                        Respectfully submitted,

JONES MAYER

By: /s/ *Denise Lynch Rocawich*
JAMES R. TOUCHSTONE
DENISE LYNCH ROCAWICH
Attorneys for Sean Steelmon

STEELMON'S REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGEMENT AND/OR ADJUDICATION