James R. Touchstone, SBN 184584
jrt@jones-mayer.com
Denise Lynch Rocawich, SBN 232792
dlr@jones-mayer.com
JONES & MAYER
3777 North Harbor Boulevard
Fullerton, CA 92835
Telephone:  (714) 446-1400
Facsimile:  (714) 446-1448

Attorneys for SEAN STEELMON

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NELSON VASQUEZ, individually and as successor-in-interest to Decedent, Oscar Vasquez Lopez; DAYLIN VASQUEZ individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; LUSSY VASQUEZ, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; OSCAR VASQUEZ, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; K.V., by and through her Guardian ad litem, Daylin Vasquez, individually and as successor- in-interest to Decedent Oscar Vasquez Lopez; A.V., by and through his Guardian ad litem, Daylin Vasquez, individually and as successor-in-interest to Decedent Oscar Vasquez Lopez; and JOSE VASQUEZ LOPEZ, individually, <br><br>   Plaintiffs, <br>  vs. <br><br>CITY OF LOS ANGELES, SEAN STEELMON; and DOES 2 through 10, inclusive, <br><br>   Defendants. | Case No:  8:24−cv−02421-FLA (JDE) <br>Judge: Hon. Fernando L. Aenlle-Rocha <br>Court Room:  6B <br><br>**DECLARATION OF DENISE LYNCH ROCAWICH IN SUPPORT OF DEFENDANT STEELMON'S REPLY TO OPPOSITION TO MOTION TO FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT OF ISSUES** <br><br><br>Date: April 3, 2026 <br>Time: 1:30 p.m. <br>Crtm: 9B |

DECLARATION OF ROCAWICH IN SUPPORT OF REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT OF ISSUES

## DECLARATION OF DENISE LYNCH ROCAWICH IN SUPPORT OF REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMARY JUDGMENT OF ISSUES

I, Denise Lynch Rocawich, declare:

1. I am an attorney licensed to practice law in the State of California. I am a partner in the law firm of Jones & Mayer, counsel of record for Defendant, Officer Sean Steelmon. This Declaration is submitted in support of Officer Steelmon's Reply to Opposition Motion for Summary Judgment and/or Partial Summary of Judgment of Issues. I have personal knowledge of the following facts and, if called as a witness, I would and could competently testify thereto.

2. Plaintiffs have objected to Officer Steelmon's Motion for Summary Judgment and/or Partial Summary Judgment of Issues as violating Local Rule 11-6.1 and this Court's Standing Order for exceeding the word limit therein. I acknowledge the violation, and apologize to the Court and to Plaintiffs' counsel for the error. It was inadvertent and simply the result of varying drafts of the Motion. Officer Steelmon respectfully submits that the serious issues raised in his Motion, which addresses seven different claims brought by Plaintiffs, should be decided by this Court on the merits, with the benefit of all pertinent briefing. See Pro. Programs Grp. v. Dep't of Com., 29 F.3d 1349, 1353 (9th Cir. 1994) and Iturbe v. Sunny Acre LLC, 2025 U.S. Dist. LEXIS 122867 * 13-14 (C.D. Cal. June 27, 2025).

3. The Court's consideration of Officer Steelmon's Motion in its entirety will result in no prejudice to Plaintiffs for a number of reasons. First, counsel for Officer Steelmon provided counsel for Plaintiffs essentially the entirety of the Motion prior to filing as part of the meet and confer process. Attached hereto as Exhibit "I" is a true and correct copy of the detailed meet and confer letter sent in advance of Officer Steelmon's Motion being filed. Moreover, the vast bulk of the

1

word limit overage (787 words) is comprised of the Introduction, Legal Standard, Conclusion and Headings – none of which contain legal argument. 1463 words address the statement of facts which, due to a number of body worn camera videos of the incident, are largely uncontested.

4.      Alternatively, Officer Steelmon respectfully request that this Court continue the hearing date on his Motion and permit Plaintiffs to file a Sur-Reply to address any issues Plaintiffs feel could not be properly addressed within the word limits of their Opposition.

5.      As Exhibit "7" to the Declaration of Benjamin S. Levine, and filed concurrently with an Application to File Under Seal, Plaintiffs offered portions of (1) the August 8, 2024, Intradepartmental Correspondence from then-Interim LAPD Chief of Police Dominic C. Choi to the Los Angeles Board of Police Commissioners containing his findings and analysis regarding the tactics and deadly force used by Defendant Sean Steelmon during the subject incident and (2) the record of votes by the Board of Police Commissioners during its September 24, 2024, closed session meeting, regarding whether to adopt the recommendations detailed in Chief Choi's August 8, 2024, letter.

6.      Filed concurrently herewith, together with Steelmon's Application to File Under Seal, as Exhibit "J" is a true and correct copy of the LAPD Board of Rights – the final disciplinary appeal body for officers accused of misconduct -- Rationale of Findings Transcript dated May 7, 2025 wherein the Board of Rights heard the appeal of the findings of the Board of Police Commissioners regarding the tactics and deadly force used by Defendant Sean Steelmon during the subject incident submitted by Plaintiffs as Exhibit 7.  Exhibit "J" was produced to Plaintiffs' counsel by Defendant City of Los Angeles, bates numbered CITY 0002952-2970, during discovery in this matter

DECLARATION OF ROCAWICH IN SUPPORT OF REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMMARY JUDGMENT OF ISSUES

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 20th day of March, 2025, at Fullerton, California.



_____
Denise Lynch Rocawich, Esq.

DECLARATION OF ROCAWICH IN SUPPORT OF REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT AND/OR PARTIAL SUMMMARY JUDGMENT OF ISSUES

# EXHIBIT "I"

## (Meet and Confer)

JONES MAYER
LAW

www.jones-mayer.com

February 5, 2026

Dale K. Galipo, Esq.
Benjamin Levine, Esq.
Law Offices of Dale K. Galipo
21800 Burbank Blvd, Suite 310
Woodland Hills, CA 91367
dalekgalipo@yahoo.com; blevine@galipolaw.com

**VIA EMAIL**

      RE:    Nelson Vasquez, et al. vs. City of LA, et al..
              USDC Case No. CV24-02421 FLA (JDE)

Dear Counsel:

We have determined that a Motion for Summary Judgment on Officer Steelmon's behalf is appropriate. This letter shall serve as a written attempt to open the meet and confer process required by USCD Local Rule 7-3. The bases for Officer Steelmon's Motion is as follows:

**NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE FIRST CLAIM AGAINST OFFICER STEELMON UNDER 42 U.S.C. § 1983 FOR EXCESSIVE FORCE**

All claims that law enforcement officers have used excessive force -- deadly or otherwise -- in the course of an arrest must be analyzed under the Fourth Amendment and its "reasonableness" standard which requires "careful attention to the facts and circumstances of each particular case," without the "20/20 vision of hindsight," adopting "the perspective of a reasonable officer on the scene," and making "allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving." Graham v. Connor, 490 U.S. 386, 395-97, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989); Scott v. Harris, 550 U.S. 372, 383; 127 S. Ct. 1769; 167 L. Ed. 2d 686 (2007); Ward v. City of San Jose, 967 F.2d 280, 284 (9th Cir. 1992) [as amended]. The inquiry "is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham, 490 U.S. at 396.

Whether a specific use of force is reasonable requires a court to balance the nature and quality of the intrusion on an individual's liberty with the countervailing governmental interests at stake. Graham, 490 U.S. at 396; see also Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005). Such analysis is approached using a three-step inquiry. First, the gravity of the particular intrusion on Fourth Amendment interests is assessed by evaluating the type and amount of force

**Northern California**
6349 Auburn Blvd.
Citrus Heights, CA 95621
(916) 771-0635

**Southern California**
3777 N. Harbor Blvd.
Fullerton, CA 92835
(714) 446-1400

Dale K. Galipo, Esq.
February 5, 2026
Page 2

inflicted. See Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir. 1994). Second, the importance of the government interests is taken into account by evaluating: "(1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight." Smith, 394 F.3d at 701 *quoting* Graham, 490 U.S. at 396.  Third, the gravity of the intrusion on the alleged victim's liberty is balanced against the government's need for that intrusion. Miller v. Clark Cty., 340 F.3d 959, 964 (9th Cir. 2003). The Graham factors, however, are not exclusive and courts must "examine the totality of the circumstances and consider whatever specific factors may be appropriate in a particular case, whether or not listed in Graham." Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010) [internal quotation marks and citation omitted]. Finally, "whenever practicable, a warning must be given before deadly force is employed." Harris v. Roderick, 126 F.3d 1189, 1201 (9th Cir. 1997).

Here, the use of deadly force is obviously not insignificant. However, the government's interest in that use of force was extremely high. First, as to the severity of the crime, the initial 911 call was for a man with a firearm in a public parking lot. As such, Officer Steelmon was investigating possible violations of Cal. Penal Code section 25400 [crime of carrying a concealed firearm] and section 25850 [crime of carrying a loaded firearm in public], which are misdemeanors in certain circumstances and felonies in circumstances outlined by Section 25400(c) and Section 25850(c). "The government has an undeniable legitimate interest in apprehending criminal suspects, . . . and that interest is even stronger when the criminal is . . . suspected of a felony." Miller v. Clark Cty., 340 F.3d 959, 964 (9th Cir. 2003) [citations omitted]. When dealing with a felony suspect, the "severity of the crime" factor "***strongly favors the government***." Id. [emphasis added].

Second, "the most important single element of the three specified [Graham] factors [is]: ***whether the suspect poses an immediate threat*** to the safety of the officers or others." Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005) [internal quotations and citation omitted] [emphasis added]. Assessing the threat posed by a suspect requires an evaluation of whether the totality of the circumstances facing the officer from the perspective of a reasonable officer on the scene, making allowance for whether the officer is forced to make split-second decisions in a tense and rapidly evolving situation, warrant the use of such a degree of force at the time it is used.  Graham, 490 U.S. at 395-97; Deorle v. Rutherford, 272 F.3d 1272 (9th Cir. 2001). Specifically in the context of deadly force, "[w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others," the use of deadly force is not constitutionally unreasonable. Garner, 471 U.S. at 11.

While police officers "may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed", even deadly force can be used when an armed suspect makes "a furtive movement, harrowing gesture, or serious verbal threat." Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997) and George, 736 F.3d at 838. Here, Decedent had a handgun in his waistband. Immediately prior to the shooting, Decedent ignored

Dale K. Galipo, Esq.
February 5, 2026
Page 3

Officer Steelmon's commands: "Don't move, don't reach for the gun.",  "Do not reach for the gun." And Officer Steelmon's warning, "I'm going to shoot you if you reach for that gun. Don't do it". After a couple seconds elapsed, Officer Steelmon continued giving commands to Decedent, telling him "Hands in the air. Put your hands on top of your head now." Eventually yelling, "Don't do it!" immediately prior to firing when Decedent ignored the commands and warning and grabbed for the firearm.

As to the third and final prong, whether Decedent attempted to evade or flee arrest, that prong leans towards favoring the government as Decedent ignored Officer Steelmon's multiple commands. In sum, all three <u>Graham</u> factors decisively favor Officer Steelmon and the circumstances as a whole clearly indicate that the force used upon Decedent was objectively reasonable at the time it was used. Officer Steelmon made the split-second decision to shoot when Decedent reached for his firearm. Officer Steelmon reasonably feared that Decedent was pulling the gun out in order to fire it at the Officers. Thus, it is unquestionable that at the time deadly force was used, Decedent posed a serious threat to Officer Steelmon with the potential to cause serious bodily injury or death if he fired his weapon at the Officer.

**<u>NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE SECOND CLAIM AGAINST OFFICER STEELMON UNDER 42 U.S.C. § 1983 FOR UNLAWFUL DETENTION/FALSE ARREST</u>**

The Second Claim for Relief is for unlawful detention/false arrest under 42 U.S.C. § 1983. First and foremost, if Officer Steelmon had a reasonable articulable suspicion that criminal activity was afoot, he could detain Decedent to conduct an investigatory, "pat down" frisk, consistent with the Fourth Amendment's prohibition against "unreasonable searches and seizures." <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 109 S. Ct. 1581 (1989) *citing* <u>Terry v. Ohio</u>, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)). Where a 911 call exhibits sufficient "indicia of reliability," it provides Officers with reasonable suspicion justifying a <u>Terry</u> stop. <u>Id</u>.; <u>see also</u> <u>United States v. Terry-Crespo</u>, 356 F.3d 1170, 1173-1177 (9th Cir. 2004).

The case of <u>Foster v. City of Indio</u>, 908 F.3d 1204, 1217 (9th Cir. 2018) is directly on point. In that case, Indio Police Department received an anonymous 911 call reporting a person exiting a liquor store with a concealed handgun in his right-hand pocket. The caller gave specific details that they had observed first-hand, gave a physical description of the person with the handgun, and gave a location of the person with the handgun. <u>Id.</u> at 1214-1217. The Ninth Circuit concluded that a reasonable officer "could have concluded that the 911 call demonstrated 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop'." <u>Id.</u> at 1214 *quoting* <u>Ala. v. White</u>, 496 U.S. 325, 327, 110 S. Ct. 2412 (1990).

Here, the call regarding an armed man later confirmed to be Decedent had several indicia of reliability. First, the call was a 911 call. "A caller's use of a 911 number makes the tip more

Dale K. Galipo, Esq.
February 5, 2026
Page 4

credible because a 911 call can be recorded and callers can be traced." Foster, supra at 1214 *citing* Florida v. J.L., 529 U.S. 266, 275-76, 120 S. Ct. 1375 (2000) (Kennedy, J., concurring) and Terry-Crespo, supra at 1175-76. Indeed, the phone number of the reporting party appears in the CAD report here and the caller was identified and interviewed. In addition, 911 calls are more credible because the police must take 911 emergency calls seriously and respond with dispatch. See Terry-Crespo, 356 F.3d at 1176. Further, the 911 caller here "claimed eyewitness knowledge" of the handgun, described the location, color and type of vehicle the man with the firearm was sitting in. Foster, supra at 1214; see also Illinois v. Gates, 462 U.S. 213, 234, 103 S. Ct. 2317 (1983) [stating that the tipster's "detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case"]. Indeed, the evidence shows the call *was* reliable because when Officer Steelmon arrived, there was only a single dark gray pick-up truck in front of CVS and it was the truck in which Decedent was sitting with a firearm.

Also, as noted in Foster, a reasonable officer here could have concluded that the 911 call provided information on potential illegal activity because "California law "generally prohibits carrying concealed firearms in public, whether loaded or unloaded." Foster, supra at 1216 *citing* Peruta v. Cty. of San Diego, 824 F.3d 919, 925 (9th Cir. 2016) [en banc] and Cal. Penal Code § 25400 [crime of carrying a concealed firearm], § 25850 [crime of carrying a loaded firearm in public]. More importantly, Penal Code section 25850(b) specifically permits officers to examine a firearm "in order to determine whether or not a firearm is loaded for the purpose of enforcing [Section 25850]." Thus, a 911 call related to a firearm in public "raises a reasonable suspicion of potential criminal activity, even if the tip does not state that the person is carrying the firearm illegally or is about to commit a crime." Foster, supra at 1215.

"Moreover, the Supreme Court has long held that even factors consistent with innocent conduct may give rise to reasonable suspicion." Foster, supra at 1216 *citing* United States v. Arvizu, 534 U.S. 266, 274, 122 S. Ct. 744 (2002) and United States v. Sokolow, 490 U.S. 1, 9, 109 S. Ct. 1581 (1989). Additionally, "the knowledge of the dispatcher is imputed to the officers in the field when determining the reasonableness of the Terry stop." United States v. Torres, 534 F.3d 207, 210 (3rd. Cir. 2008). For all these reasons, it is without question that Officer Steelmon had a reasonable articulable suspicion that Decedent was involved in criminal activity such as they could detain him to conduct an investigatory pat down and/or inspection of his weapon.

As to false arrest, Decedent was not arrested prior to the shooting. The Supreme Court and the Ninth Circuit court have permitted limited intrusions on a suspect's liberty during a Terry stop to protect the officer's safety and have held that the use of force does not convert the stop into an arrest if it is justified by a concern for the officer's personal safety. See United States v. Hensley, 469 U.S. 221, 235-36, 105 S. Ct. 675 (1985); Terry v. Ohio, 392 U.S. 1, 24, 88 S. Ct. 1868, 1881 (1968). Specifically, courts have permitted making individuals lie on the pavement and holding them at gunpoint [United States v. Alvarez, 899 F.2d 833, 838 (9th Cir. 1990); United States v. Buffington, 815 F.2d 1292, 1300 (9th Cir. 1987); People v. Celis, 33 Cal. 4th 667, 675 (2004)], placing individuals in a police car [U.S. v. Parr, 843 F.2d 1228, 1231 (9th Cir.

Dale K. Galipo, Esq.
February 5, 2026
Page 5

1988)] and handcuffing detained persons [People v. Bowen, 195 Cal. App. 3d 269, 272-274 (1987); U.S. v. Bautista 684 F.2d 1286, 1289-1290 (9th Cir. 1982); Haynie v. County of Los Angeles (9th Cir. 2003) 339 F.3d 1071, 1077] all without converting a detention into an arrest.

Further, the evidence shows that there was also no post-shooting arrest as Vasquez was already deceased. Further, had Decedent survived, A claim for false arrest is only cognizable under Section 1983 as a violation of the Fourth Amendment if the arrest was without probable cause or other justification. Dubner v. City and County of San Francisco, 266 F.3d 959, 964-65 (9th Cir. 2001). Here, the evidence shows that Officer Steelmon clearly had probable cause to arrest Decedent for Penal Code section 241 [assault on an officer] or section 245 [assault with a deadly weapon]. For all these reasons, the Second Claim fails as a matter of law.

**NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE THIRD CLAIM AGAINST OFFICER STEELMON UNDER 42 U.S.C. § 1983 FOR DENIAL OF MEDICAL CARE**

Allegations of denial of medical care immediately following arrest are also analyzed under the Fourth Amendment's reasonableness standard. See Tatum v. City and County of San Francisco, 441 F.3d at 441 F.3d 1090, 1098 (9th Cir. 2006); See also Von Haar v. City of Mt. View, 2011 U.S. Dist. LEXIS 19789 at *3 (N.D. Cal. Mar. 1, 2011). The reasonableness inquiry in this context is whether the officer's actions with regard to medical care were "'objectively reasonable' in light of the facts and circumstances confronting" the officer. Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005). "Just as the Fourth Amendment does not require a police officer to use the least intrusive method of arrest, neither does it require an officer to provide what hindsight reveals to be the most effective medical care for an arrested suspect." Tatum, 441 F.3d at 1098. An officer satisfies the Fourth Amendment reasonableness standard by summoning the necessary medical assistance for an injured arrestee. Tatum, 441 F.3d at 1099; see also Maddox v. City of Los Angeles, 792 F.2d 1408, 1415 (9th Cir. 1986).

This standard was unquestionably met here. The evidence demonstrates that the officer-involved shooting occurred at 1:04:28. Less than a minute later, at 1:04:45, Sergeant Talbot broadcasted a request for a rescue ambulance. A minute after that, at 1:05:49, Sergeant Talbot broadcasted a second request for a rescue ambulance, which was acknowledged by the Communications Division. In short, the Fourth Amendment reasonableness standard was met as medical assistance was indeed summoned.

**NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE FOURTH CLAIM AGAINST OFFICER STEELMON UNDER 42 U.S.C. § 1983 FOR INTERFERENCE WITH FAMILIAL RELATIONSHIP**

Plaintiffs' Fourteenth Amendment claims require a much higher standard of proof than the "reasonableness" standard for Fourth Amendment claims. Under the Fourteenth Amendment, "only official conduct that 'shocks the conscience' is cognizable as a due process violation."

Dale K. Galipo, Esq.
February 5, 2026
Page 6

Porter v. Osborn, 546 F.3d 1131, 1137 (9th Cir.2008). Conscience-shocking actions are those taken with (1) "deliberate indifference" or (2) a "purpose to harm . . . unrelated to legitimate law enforcement objectives." Id. The lower "deliberate indifference" standard only applies to circumstances where "actual deliberation is practical." Wilkinson v. Torres, 610 F.3d 546, 554 (9th Cir. 2010); see also Lewis, 523 U.S. at 851.  However, in circumstances where an officer cannot practically deliberate, such as where "a law enforcement officer makes a snap judgment because of an escalating situation, his conduct may only be found to shock the conscience if he acts with a purpose to harm unrelated to legitimate law enforcement objectives." Wilkinson, 610 F.3d at 554.

The more stringent "purpose to harm" standard is applicable to the case at hand because it is applied in situations where the police "have obligations that tend to tug against each other" and must make decisions "in haste, under pressure, and frequently without the luxury of a second chance." Lewis, 523 U.S. at 853. "Perhaps most telling is the [Lewis] Court's description of the dilemma of a police officer who must make a "split-second" decision whether to pursue a suspect". Onossian v. Block, 175 F.3d 1169, 1171 (9th Cir. Cal. 1999). Deliberation is impractical when dealing with "fast paced circumstances presenting competing public safety obligations." Porter, 546 F.3d at 1139.

The situation involving Decedent was one in which Officer Steelmon faced an "evolving set of circumstances that took place over a short time period necessitating fast action and presenting obligations that tend to tug against each other'" as opposed to a "controlled situation." Porter, 546 F.3d at 1139 [internal citations omitted]. From the time that Officer Steelmon saw that Decedent had a firearm in his waistband and yelled "Gun, gun, gun" to the time the single shot was fired was 42 seconds. During that 42 seconds, Officer Steelmon gave Decedent multiple commands and faced split-second decisions in a situation that escalated extremely rapidly. A mere 27 seconds elapsed between the time Officer Steelmon warned Decedent that he would be shot if he touched the gun to the time Officer Steelmon actually fired. Officer Steelmon did "not have the luxury of delay" and instead had "precious little time for deliberation". Indeed, Here, Officer Steelmon made the decision to fire in the split second that Decedent gripped the gun in his waistband. Accordingly, Officer Steelmon's actions must be judged under the "purpose to harm" standard.

In order to prove that Officer Steelmon's actions shock the conscience under the purpose to harm standard of culpability, Plaintiffs must prove that his purpose was "to cause harm unrelated to the legitimate object of arrest." Lewis, 523 U.S. at 836. "More specifically, '[i]t is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability under § 1983 . . . .'." Porter v. Osborn, 546 F.3d 1131, 1140 (9th Cir. 2008) citing Davis v. Township of Hillside, 190 F.3d 167, 172 (3d Cir. 1999). As discussed above, the undisputed facts establish that Officer Steelmon's conduct was related to the legitimate law enforcement objectives of investigating a man armed with a gun in a

Dale K. Galipo, Esq.
February 5, 2026
Page 7

public parking lot. As such, Plaintiffs cannot maintain a claim under the Fourteenth Amendment and summary judgment is appropriate.

## OFFICER STEELMON IS ENTITLED TO QUALIFIED IMMUNITY

Even if a Plaintiffs have succeeded in alleging a deprivation of a constitutional right, they must still show that the constitutional right at issue was "clearly established" in order to escape the application of qualified immunity. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); Camarillo v. McCarthy, 998 F.2d 638, 639 (9th Cir. 1993). When considering a claim of qualified immunity, courts engage in a two-part inquiry: do the facts show that the defendant violated a constitutional right, and was the right clearly established at the time of the defendant's purported misconduct? Delia v. City of Rialto, 621 F.3d 1069, 1074 (9th Cir. 2010) *quoting* Pearson v. Callahan, 555 U.S. 223, 231-32, 129 S. Ct. 808; 172 L. Ed. 2d 565 (2009).

"A negative answer [of either prong] ends the analysis, with qualified immunity protecting the defendants from liability." Clement v. Gomez, 298 F.3d 898, 903 (9th Cir. 2002). A court may however exercise its discretion in reaching the second prong first, which is solely a question of law. Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010); Brosseau v. Haugen, 543 U.S. 194, 201-02, 125 S. Ct. 596; 160 L. Ed. 2d 583 (2004). More importantly, police officers are presumed to be protected by qualified immunity. See Gasho v. United States, 39 F.3d 1420, 1438 (9th Cir. 1994). "To overcome this presumption [of qualified immunity protection], a plaintiff must show that the officer's conduct was 'so egregious that any reasonable person would have recognized a constitutional violation.'" Id. [internal citations omitted]. The standard is a demanding one. The contours of a right must be "sufficiently clear that *every* reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011) [emphasis added]. Thus, the standard is not whether clearly established law *supported* the officer's use of force, rather it is whether an officer's conduct was *prohibited* by clearly established law.

The Supreme Court has repeatedly stressed the importance of qualified immunity, and recently reemphasized that importance in the case of White v. Pauly, 580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017). In White, the Supreme Court addressed the denial of qualified immunity to police officers on a Fourth Amendment excessive force claim by the Tenth Circuit. The Supreme Court began by stating that "qualified immunity attaches when an official's conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" White, at *551 *citing* Mullenix v. Luna, 577 U. S. 7136 S. Ct. 305; 193 L. Ed. 2d 255, 257 (2015).

Further, the Court has stated that while "case law 'does not require a case directly on point' for a right to be clearly established, 'existing precedent must have placed the statutory or constitutional question *beyond debate*.'" Id. [emphasis added]. Concluding, "[i]n other words, immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" Id. The Court also emphasized the importance of the qualified immunity doctrine saying it is "important to society as a whole" noting that qualified immunity "is effectively lost if a case is erroneously permitted to go to trial." White, 580 U. S. at 77-78.

Dale K. Galipo, Esq.
February 5, 2026
Page 8

The Supreme Court in White admonished the federal Circuit Courts stating: "In the last five years, this Court has issued a number of opinions reversing federal courts in qualified immunity cases." White, 580 U. S. at 79. The White Court then continued "[t]oday, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality'." White, 580 U.S. at 79 citing Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011). The Supreme Court found that the Tenth Circuit had misunderstood the clearly established analysis in that it "relied on Graham, Garner, and their Court of Appeals progeny, which lay out excessive-force principles at only a general level" and concluded that general statements of the law are not inherently incapable of giving fair and clear warning to officers and that "Garner and Graham do not by themselves create clearly established law outside an obvious case." White, 580 U.S. at 80.

In the case of Kisela v. Hughes, 138 S. Ct. 1148 (2018), the Supreme Court overturned the Ninth Circuit and warned lower courts that they must not define "clearly established" law with a high level of generality in deciding whether police officers are entitled to qualified immunity. In reversing, the Supreme Court began by noting: "This Court has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." Id. at 1152 [internal citations omitted]. The Court then explained that the qualified immunity doctrine is particularly important in the Fourth Amendment context "where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Id. Accordingly, "[u]se of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." Id. at 1153 [internal citations omitted].

Here, there is no legal precedent that "squarely governs" the specific facts of this case. The Officers announced their presence as police officer as soon as they approached the vehicle. Officers Steelmon gave a number of commands to Decedent including telling him "Don't move, don't reach for the gun.",  "Do not reach for the gun." And warning, "I'm going to shoot you if you reach for that gun. Don't do it". After a couple seconds elapsed, Officer Steelmon continued giving commands to Decedent, telling him "Hands in the air. Put your hands on top of your head now." Eventually yelling, "Don't do it!" immediately prior to firing when Decedent ignored the commands and warning and grabbed for the firearm. There is no Ninth Circuit, or Supreme Court case, wherein the court holds that an officer who sees a suspect make a movement toward what the officer knows is a gun must wait before resorting to lethal force.

To the contrary, Ninth Circuit case law "is clear that when a suspect reaches for a gun . . . responding with deadly force does not violate the Constitution." Sabbe v. Washington Cnty. Bd. of Commissioners, 84 F.4th 807, 828 (9th Cir. 2023). In that same vein, the Ninth Circuit has held that when a suspect is "reasonably suspected of being armed," even a furtive movement can "create an immediate threat" sufficient to justify the use of deadly force. George, 736 F.3d at 838. Most relevantly, the Ninth Circuit has told officers that it is "unquestionably reasonable" to shoot at a suspect that "reaches for a gun in his waistband, or even if he reaches there for some other reason." Cruz v. City of Anaheim, 765 F.3d 1076, 1078 (9th Cir. 2014). In sum, Officers are not required to delay using deadly force until the moment that a suspect poses the maximum threat. "Surely [an officer is] not required to wait and be seriously injured or killed before exercising his judgment and bringing the situation under control." Monroe v. City of Phoenix, 248 F.3d 851, 862 (9th Cir. 2001).

Dale K. Galipo, Esq.
February 5, 2026
Page 9

As discussed at length above, Decedent suffered no constitutional violation of any sort. However, assuming arguendo this Court were to find that a constitutional violation *had* occurred, Officer Steelmon would nonetheless be entitled to summary judgment on the grounds of qualified immunity because the rights alleged by Plaintiffs were anything but clearly established at the time of the incident. In fact, not only is there a lack of law *prohibiting* Officer Steelmon's conduct, there is a significant number of cases *supporting* it.

**NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE EIGHTH CLAIM AGAINST OFFICER STEELMON FOR BATTERY**

In California, a claim of battery against a peace officer requires proof of unreasonable conduct on the part of the officer. See, e.g., Munoz v. City  of Union City, 120 Cal.App.4th 1077, 1102 (2004); Edson v. City of Anaheim, 63 Cal.App.4th 1269, 1272 (1998); Grundt v. City of Los Angeles, 2 Cal.3d 575, 587 (1970). Because Officer Steelmon's conduct here was reasonable as discussed at length above, the Eighth Claim fails.

**NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE NINTH CLAIM AGAINST OFFICER STEELMON FOR NEGLIGENCE**

To establish a claim for negligence against Officer Steelmon, Plaintiffs must demonstrate that (1) Officer Steelmon had a legal duty to use due care; (2) that Officer Steelmon breached that duty; and that (3) the breach was the proximate or legal cause of the resulting injury to Decedent. See Toomey v. Southern Pac. R. Co. (1890) 86 Cal. 374, 381. Further, what reasonable means differs in battery and negligence contexts. See lso Hernandez v. City of Pomona, 46 Cal.4th 501, 514 (2009). In short, though the ultimate use of force may be reasonable under the circumstances, an Officer's pre-shooting conduct must also be evaluated to determine whether the Officer was negligent under state law. See Grudt v. Los Angeles, 2 Cal. 3d 575, 587 (1970). The law of negligence does not require officers to choose the "'most reasonable' action or the conduct that is the least likely to cause harm," so long as their conduct falls "within the range of conduct that is reasonable under the circumstances." Hayes v. Cty. of San Diego, 57 Cal. 4th 622, 632 (2013) [citation omitted].

Here, while driving to the call, Officers Steelmon and Tamate discussed the details of the call and tactics. Upon arrival, Officer Steelmon attempted to obtain compliance from Decedent multiple times. Officer Steelmon explicitly warned Decedent that he would be shot if he grabbed for the firearm. In short, the officers "were methodical and engaged in reasonable exercises of judgment in their pre-shooting conduct." See Smith v. Cty. of Butte, 2017 U.S. Dist. LEXIS 65335, at *50-53 (E.D. Cal. Apr. 28, 2017).

Dale K. Galipo, Esq.
February 5, 2026
Page 10


**NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE TENTH CLAIM
AGAINST OFFICER STEELMON FOR NEGLIGENT INFLICTION FOR
EMOTIONAL DISTRESS**

Under California law, Negligent Infliction of Emotional Distress claims allow a plaintiff
to recover damages for emotional distress "[i]n the absence of physical injury or impact to the
plaintiff himself" if the plaintiff: "(1) is closely related to the injury victim; (2) is present at the
scene of the injury-producing event at the time it occurs and is then aware that it is causing injury
to the victim and, (3) as a result suffers emotional distress beyond that which would be
anticipated in a disinterested witness." Thing v. La Chusa, 48 Cal.3d 644, 647. Here, Plaintiff
Jose Vasquez Lopez testified in deposition that he had no recollection of the incident. As such.
he cannot establish a necessary element of the Claim – that he was aware Decedent was being
injured at the time he was injured.

Further, the negligent causing of emotional distress is not an independent tort, and this
tort is subsumed within negligence. Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 984-
85; Burgess v. Superior Court, 2 Cal.4th 1064, 1071-72. To establish negligent infliction of
emotional distress the plaintiff must prove the traditional elements of negligence: duty, breach of
duty, causation and damages. Burgess, supra 2 Cal.4th at 1071-72; Friedman v. Merck & Co.,
107 Cal.App.4th 454, 463. Because Officer Steelmon's conduct here was not negligent as
discussed at length above, he is entitled to judgment as a matter of law as to the Tenth Claim for
negligent infliction of emotional distress.

**NO GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO THE ELEVENTH CLAIM
AGAINST OFFICER STEELMON FOR VIOLATION OF CIVIL CODE SECTION 52.1**

Section 52.1(a) provides a cause of action where "a person or persons, whether or not
acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere
by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or
individuals" of rights under federal or state law. Cal. Civ. Code § 52.1.

A finding of a constitutional violation in an excessive force claim is sufficient to satisfy
the "threat, intimidation, or coercion" element of section 52.1. Cornell v. City & Cty. of San
Francisco, 17 Cal. App. 5th 766, 800 (2017). However, the Bane Act imposes an additional
requirement beyond a finding of a constitutional violation. A plaintiff must also show that an
officer had a *specific intent* to violate the arrestee's right to freedom from unreasonable seizure.
Id. at 801.

Here, as discussed above, the undisputed facts and video evidence decisively demonstrate
that no constitutional violation occurred. Additionally, Plaintiffs have zero evidence that Officer
Steelmon had a specific intent to violate Decedent's rights. What is apparent from the facts and
evidence, is that Officer Steelmon acted reasonably to stop the threat of serious bodily injury or

Dale K. Galipo, Esq.
February 5, 2026
Page 11

death posed by Decedent's actions in failing to heed Officer Steelmon's commands not to move and not to reach for the gun and ignoring Officer Steelmon's warning "I'm going to shoot you if you reach for that gun. Don't do it" and instead reaching for and grabbing the grip of the handgun. Thus, the Eleventh Claim fails.

For all the above reasons, Officer Steelmon will move for summary judgment on all Claims. As required by Rule of Court 7-3, I will follow up with a telephonic meet and confer tomorrow. If you agree to submit to any portion of the MSJ, please let me know via email.

Sincerely,

Denise Lynch Rocawich, Esq.

cc:    James R. Touchstone, Esq.
       Christian Bojorquez, Esq.

# EXHIBIT "J"

## (Board of Rights Rationale of Findings Transcript)

# FILED SEPARATELY WITH COURT

# (SEE APPLICATION FOR LEAVE TO

# FILE UNDER SEAL)